H. W. HALSTEAD, *Appellant*, vs. FLORENCE CITRUS GROW-
ERS ASSOCIATION, a Florida corp., S. S. SANDFORD, HIL-
TON S. HAMPTON & C. D. DENNIS, *Appellees*.

139 So. 132.

En Banc.

Opinion filed January 12, 1932.

Petition for rehearing denied March 17, 1932.

*Edwards & Marchant* and *Oxford & Cutts*, Attorneys at Law, Lakeland, Florida, for Appellant;

*Huffaker & Edwards*, Attorneys at Law, Bartow, Florida, for S. S. Sandford and Hilton S. Hampton, Appellees.

*O. P. Hilburn*, Attorney at Law, Tampa, Florida, for C. D. Dennis, Appellee.

ANDREWS, Commissioner.—This cause is here upon appeal from the Circuit Court of Polk County and is based upon an order sustaining a demurrer of defendants to the bill of complaint and dismissing the bill. The appellant was complainant and the appellees were defendants in the court below.

The bill shows that the controversy upon which the suit is based grew out of a disputed parol contract between complainant's attorneys and himself as to the fees agreed to be paid in a suit in the event of a recovery of damages for personal injuries.

While the demurrer interposed by defendants has incorporated therein an answer the only question presented here for review is the order of the court sustaining the demurrer to the bill. There is nothing to show that there was any hearing on bill and answer or that the matters set up in the answer were passed upon.

The general rule is that a demurrer to the whole bill in suits in chancery operates as an admission that all the allegations in the bill which are well pleaded are true, and the demurrer should be overruled if the bill makes any case for equitable relief. Phifer v. Abbott, 73 Fla. 402, 74 So. 488; Marsh v. Marsh, 72 Fla. 142, 72 So. 638, and cases there cited.

Whether or not there is "any equity in the bill" as drafted and filed is the only question we have for consideration, and this question being always a matter determinable upon the face of the pleadings no discretion may be indulged in favor of the ruling of the trial court.

The main allegations of the bill upon which equitable relief is based and sought may be briefly stated as follows:

Complainant alleges he was made totally blind while in the employ of the Florence Citrus Growers Association, whose negligence caused the permanent injury, and failing to reach any settlement with said association as to damages complainant employed a named firm of lawyers to bring suit under a written contract which provided a fee of 25% of all monies collected without suit and 50% of whatever amount may be collected by suit. Suit was filed in due course and soon thereafter for some reason said firm withdrew from the case and thereupon complainant accompanied by his wife engaged Mr. Hampton who associated Mr. Sandford.

Complainant in his bill claims that a similar arrangement to that made with the first firm was made with the newly engaged attorneys and that before the suit went to trial a compromise settlement of the damages was reached between complainant Halstead and the Florence Citrus Growers Association whereby the latter entered into a contract on January 12, 1927, to pay Halstead $8,500.00 in cash and placed him on its payroll at $200.00 per month for the remainder of his life and gave satisfactory security for performance, also provided that in the event Halstead should die within three years from (January 12, 1927) date of compromise agreement, his heirs would be paid ten thousand dollars ($10,000.) in addition to any amount received at that time, and in the event he should die *after* three years from date of contract the defendant may terminate its liability by paying the heirs the difference be-

tween what it had already paid and the sum of thirty thousand dollars ($30,000.).

Complainant further alleges that on the date of the settlement one of his attorneys placed before his wife, who had always accompanied him, as he could not see, a paper which the bill alleges she supposed was a part of the contract of settlement and she had her husband sign it by touching the pen, however, it developed that the mortgage embraced the contract of settlement and therefore it does not contain the signature of Halstead, and the paper, of which she was handed a copy, proved to be an assignment of a one-half interest in and to the proceeds of the settlement and compromise and one-half interest in the mortgage executed as security for the performance and payment of the amount agreed to be paid in satisfaction of said compromise.

The bill further alleges that of the $8,500.00 paid in cash complainant received only $2,500.00 and his attorneys $6,000.00 to which complainant at the time agreed, as the settlement, in case he should live beyond three years, virtually amounted to $30,000.00, and that their fee would be $7,500.00—the damages having been settled by compromise and not by the courts, and that he was anxious to get the fee paid as soon as possible; that thereafter he received regularly his check from said association for "payroll item of $200.00 monthly installment" for January, February, March, April and May; that having learned that his attorneys were claiming one-half of the $200.00 monthly payments, he gave formal notice on June 29, 1927, to the association to make no payments to the attorneys; that, notwithstanding the notice, the association thereafter paid one-half ($100.00) to the attorneys until the end of 1929, when the total sum paid defendants amounted to $9,100.00, while complainant received a total of only $6,600.00. The bill further alleges that even on the basis of the assignment of one-half of all payments, which com-

plainant denies having signed with knowledge, that defendants in the instant case would be entitled to only one-half of the total payments of $15,700. or $7,850. and that according to his construction of the fee agreement of one-fourth to be paid in case of compromise the defendants at the time of bringing this suit had been overpaid by $1,600.00.

The demurrers to the amended bill states in substance that the cause of action on its face is barred by the statute of limitations of three years; that complainant had a copy of the assignment and is guilty of laches, and by his acts of silence had ratified the assignment of one-half interest in the contract, and that the bill sets up no cause for equitable relief against defendants.

The merits of the case are not involved and therefore will not be discussed.

Recurring first to the question of laches, it is observed that Section 4663, C. G. L. 1927, provides for the limitation of three years upon "an action for relief on the ground of fraud, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud;" Watson v. Jones, 41 Fla. 241, 25 So. 678.

Under the allegations of the bill it could not be denied that complainant would be presumed to have discovered the facts constituting the alleged fraud as to the assignment made of one-half interest in the settlement contract, a least on June 29, 1927, when complainant gave formal written notice to the Florence Citrus Growers Association not to make any payments of one-half the monthly payroll installments to defendants without his written order. The bill in the instant case was filed March 12, 1930, which is well within the three-year limit from the time complainant, from his own allegations, would be presumed to have "discovered" the facts constituting the alleged fraud. Even if we assume that the statute should run from the date of

January 12, 1927, when the assignment of the one-half interest in the settlement was made, we are confronted with the fact that this assignment is the very transaction which the bill alleges to have been made fraudulently. If it was obtained through fraud or deception of course the statute could not run from the date of execution, or any other date until discovered.

Assuming however that the assignment was questionable it becomes important as to whether complainant has not shown by other allegations in his bill that he has been guilty of laches and acquiescence from June, 1927, to January, 1930, during which time the association paid one-half the monthly payroll installment to defendants until the installments alone amounted to $3,100.00. This allegation on its face would not only tend to show that complainant had acquiesced in the contentions of the defendants as the latter were collecting said monthly payments in addition to the $6,000.00 initial cash payment but would appear to negative the allegation that complainant agreed to pay only 25% in case of compromise pending suit inasmuch as the payments received by defendants at the time this bill was filed was $9,100.00 which was $1,600.00—or 16 monthly installments of $100.00 each—in excess of the $7,500.00 which complainant claimed as the agreed fee.

If the contentions of complainant as to the amount of the fee and especially the installment payments had been insisted upon by some affirmative legal procedure soon after the letter of June 29, 1927, to the association, the demurrer no doubt would have been overruled by the trial court.

This Court has held that—

"The question of laches turns, not simply upon the number of years which have elapsed between the accruing of rights and the assertion of them, but also upon the nature and evidence of those rights, the change

in value, and other circumstances occurring during the lapse of years.'' Geter v. Simmons, 57 Fla. 433, 49 So. 131; 21 C. J. 221; 10 R. C. L. 396-399.

There are however substantial reasons why the order of the trial court sustaining the demurrer to the amended bill should not be affirmed as there is some equity in the bill by reason of the fact that the allegations of the bill show that the suit is based upon a contingent parol agreement between a client and his attorneys as to fees to be paid.

The general rule is that the law does not look upon an agreement or contract between an attorney and his client made after employment as in other business dealings where the parties trade or deal at ''arms length'' and where one may by maneuvering out-trade the other and where advantage may be sought and gained at the expense of candor and ingeniousness; in fact, this court has held that ''The measure of good faith which an attorney is required to exercise in all his dealings with his clients is a much higher standard than is required in business dealings.'' Gould v. State, 99 Fla. 662, 127 So. 309, 312; R. C. L. 966.

In the case of Williams v. Bailey, 69 Fla. 225, 67 So. 877, this Court said:

''This relation admits of so much influence and so much confidence and abuse of confidence * * * that transactions between attorneys and their clients, when the former seemingly profit at the expense of the latter, will, if not regarded as presumptively void, be examined with the closest scrutiny, to the end that it may be determined whether the attorney has exercised toward his client the utmost of good faith in every detail of the transaction.''

The above case also states that there is no presumption of innocence or improbability of wrongdoing, and that an attorney has the heavy responsibility of proving that his diligence to do the best by his client has been as great as if he was only dealing for him with a stranger. In the

case of Bolles v. O'Brien, 63 Fla. 342, 59 So. 133, this court said that where the charge is duly made "the whole burden of establishing by clear and convincing evidence the fairness of the agreement, and that it was made upon full and adequate consideration, is cast upon the attorney, and that contracts between attorney and client "not entirely equitable and fair, may be avoided by the election of the client." See also Stitt v. Powell, 94 Fla. 554, 114 So. 375; 2 R. C. L. 966, Section 42; 6 C. J. 686, Section 211.

In this case it is shown that $15,700.00 had been paid in cash on the contract of settlement when this suit was filed on February 12, 1930, of which amount the attorneys had received $9,100.00 and complainant $6,600.00, while the exact terms of the agreement purports to assign a one-half interest only in the proceeds of the settlement as paid which would be one-half of the $15,700.00 paid, or only $7,850.00. In fact, the *amount* of the fee was contingent until after the expiration of three years as the greatest amount that could have been paid in full settlement of the damages, had the complainant died within three years, would have been $25,700.00.

In considering the allegations of the bill in this case we have not overlooked the well established rule that in passing upon a demurrer to a whole bill in a suit in equity every presumption is against the bill. Phifer v. Abbott, 73 Fla. 402, 74 So. 488, and cases there cited. In applying the above rule however much may depend upon the nature of the suit.

The defendants are shown to have received $1,250.00 in excess of the amount which should have been paid to complainant under an equitable construction of the assignment. This may mean much to one in complainant's condition.

There is nothing to show that it was understood that the defendants should be paid first except the admission in the bill that complainant waived his right to half the down

payment and did not press his contention as to one-half the monthly installments expressed in his letter to the association, although defendants had been paid at the time $1,250.00 in excess of the amount paid complainant.

In the recent case of Peacock Hotel Inc. et al. v. Cordelia Shipman et al. (decided this term) this Court held that:

"1. It seems to be established by the authorities that where it is perfectly plain to the court that one party has overreached the other and has gained an unjust and undeserved advantage which it would be inequitable to permit him to enforce, that a court of equity will not hesitate to interfere, even though the victimized parties owe their predicament largely to their own stupidity and carelessness.

2. One claiming the right to rescind a transaction on the ground that the opposite party has overreached him and gained an unjust and undeserved advantage which would be inequitable to permit him to enforce under the circumstances stated in the preceding headnote, must not be guilty of any unreasonable or unnecessary delay in the assertion of his purpose to rescind or in taking steps to make it effective or he will be denied relief in equity on the ground that such delay is tantamount to a waiver of his objections to the transaction, against the consequences of which he might otherwise obtain relief."

The above principles of equity are applicable to controversies growing out of ordinary contracts where the parties deal at "arms length" and not to those of the character here involved where an allegation or charge of unfair dealing is made which, under the rules, immediately casts the burden upon the attorney to show fairness as to the matters charged.

It may also be stated here that the rule applicable to express contracts entered into between attorney and client *at or before the time* of employment as to fees to be paid is usually governed by the ordinary rules as between other competent parties (6 C. J. 935, Sec. 309), but where any

agreement is entered into between client and attorney *during the existence of the relation*, while not presumptively void, the burden of showing fairness where the question is raised rests upon the attorney (6 C. J. 735, Sec. 310). This rule applies more strictly to assignments of interest in property involved in the litigation by a client to his attorney as such assignments may be presumed to have been secured by undue influence, except where such agreements operate, without question, as a payment of reasonable and proper fees. 6 C. J. 686-692. See especially 2 R. C. L. 967, Sec. 43. In the instant case the relation of attorney and client had not ceased at the time the assignment of the one-half interest in the mortgage given for securing the payment of the agreed damages and did not until the mortgage was delivered and the $8,500.00 paid in cash even though the transactions may have occurred simultaneously.

Under the allegations of the bill, as between an attorney and client, it can hardly be said there is no equity in the bill— especially in view of the amount already received in addition to what defendants would continue to receive in excess of that of complainant, for several years, except in the event of complainant's death when the balance is payable at once, which may not occur for many years.

As to the defendant, C. B. Dennis, it is shown by the order of the court requiring the bill to be amended that Dennis accepted an assignment of the contract in question on February 12, 1930, which is the day the bill of complaint in this case was filed, and his demurrer raises practically the same matters as to limitations, laches and acquiescence as the other defendants. From the very nature of the assignment the defendant Dennis could not have acquired any rights in the assignment superior to those of his assignors, therefore his demurrer must be governed by the same rules as those expressed above as to the other defendants.

Under the rules of equity governing suits of this nature the bill cannot be said to have wholly failed to show a cause for equitable relief, therefore the decree should be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

PER CURIAM.—The record in this cause having been considered by the court, and the foregoing opinion, prepared under chapter 14553, Acts of 1929, Ex. Sess. adopted by the court as its opinion, it is considered, ordered and decreed by the court that the decree of the court below should be, and the same is hereby reversed, and this cause is remanded for further proceedings not inconsistent with the opinion.

WHITFIELD, ELLIS, TERRELL AND DAVIS, J.J., concur.

BUFORD, C.J., concurs specially.

BROWN, J., dissents.

BROWN, J. (dissenting).—The bill shows that a copy of the assignment was delivered to complainant more than three years before the bill was filed. It seems to me that there is no sufficient explanation of the long delay in bringing this suit, and that it is barred by the three-year statute of limitations as well as by laches.

BUFORD, C.J. (concurring especially).—I concur in the opinion prepared by Mr. Commissioner Andrews and in the conclusion which is reached therein, but in addition to what is said in that opinion, my view is that if the original contract between the attorney and the client was that the attorneys should receive a certain named percentage of the amount recovered under certain conditions, that is in the event of a settlement without a trial, and such a settlement was reached, and thereupon the attorneys in any manner procured from the client an agreement to pay a greater fee than that which had theretofore been agreed upon, that such subsequent agreement would be without consideration and voidable. Under this state of facts,

the service agreed to have been performed for and in consideration of the original agreed fee would have been finished and the settlement accomplished and if then the client agreed to pay an additional amount such agreement would constitute an agreement to make a voluntary contribution and, because of lack of consideration, would be voidable.