## THOMAS v. FISHER.

Circuit Court, Dade County, Civil Appeal.

January 6, 1953.

J. M. McCaskill, Miami, for appellant.

G. E. Graves, Jr., Miami, for appellee.

VINCENT C. GIBLIN, Circuit Judge.

The appellee, an attorney, sued the appellant, the executrix of the estate of a deceased client of the attorney, for the recovery of compensation for professional services he had rendered the client, a widow, in litigation in which her interest in her husband's estate had been involved.

The appellee (hereinafter designated as the plaintiff) based his claim on (a) a written agreement which had been executed by the client and him during the litigation in which he had represented her, but which she had repudiated prior to her death, and (b) on the implied agreement of the client to reasonably compensate him for the services he had rendered at her request.

The defendant executrix (the appellant here), by her answer, challenged the validity and the enforceability of the repudiated agreement. There was no denial in the answer, however, that the plaintiff had rendered services of value to the decedent and no question was raised as to his right to reasonable compensation for such services.

The trial judge (before whom the case was tried without a jury) held that the challenged agreement was valid and enforceable and gave full effect to it in his award of damages in the judgment from which the defendant executrix has appealed to this court.[1]

---

[1] Order of SILVER S. SQUARCIA, Judge, Civil Court of Record, July 24, 1952:

A jury having been waived, I have heard the testimony of the parties and their witnesses. It appears that Frank Brown, a negro, died in Dade County in 1944 and thereafter Mamie L. Brown, to whom he was allegedly married, instituted no administration proceedings in the probate court. As a result thereof the Honorable W. F. Blanton, county judge, entered an order declaring that no probate of the estate was necessary. Thereafter one Julia Brown through her attorney caused the order of no administration to be set aside on the ground that she contended she was the lawful surviving wife of Frank Brown. An administrator was appointed for the estate and Mamie then employed the plaintiff herein, L. E. Thomas, a negro attorney, to represent her in resisting the claim of Julia Brown.

I find from the evidence that at the time of his death Frank Brown and Mamie owned lot 17 in block 5 of Liberty City subdivision ostensibly as an estate by the entirety. Frank Brown also owned lot 16 in his individual right. Hearings were had before Judge Blanton to determine which of the two negro women claimants was the lawful wife of Frank Brown. During these proceedings the plaintiff Thomas and Mamie, his client, entered into an oral contract of employment wherein because Mamie was without money to pay legal fees or further court costs Thomas, if he was successful in resisting the claim of Julia Brown, was to acquire lot 16 in his own right. This oral contract was later reduced to writing. At no time during the trial was any testimony submitted to refute Thomas' testimony that an oral contract of employment had been entered into between attorney and client.

Both plaintiff and defendant violated the provisions of section 90.05, Florida Statutes 1951, known as the Dead Man Statute, and for that reason neither can invoke its provisions in this case.

Judge Blanton determined that Mamie was the lawful surviving wife of Frank Brown and that Julia had no claim. It appears that Julia even though she was "married" to Frank before Mamie married him had neglected to divorce a prior husband, so that she had no standing in court. After Judge Blanton found in favor of Mamie, Julia instituted an appeal from his ruling which was later dismissed by the circuit court.

I further find from the evidence that during the interim between the signing of the employment contract between the attorney and client and prior to the order dismissing the appeal Mamie and her employer, the executrix and defendant in this case, made a visit to Thomas' office to obtain a copy of the contract. Even though both Mamie and the executrix were present in the office, the

A careful review and analysis of the evidence has led us to the conclusion that, while there was no proof that the plaintiff had perpetrated any actual fraud, the trial judge should have ruled that the plaintiff had not established by clear and convincing proof that the agreement between him and his client was fair and equitable and was made on full and adequate consideration. We think that the trial judge should have been governed and controlled by the opinion and decision of the Supreme Court of Florida in Halstead v. Florence Citrus Growers' Assn., 139 So. 132. It is our conviction that the undisputed facts revealed by the evidence in the case at bar clamored for the application of the principles enunciated in the cited case.

Accordingly, the judgment appealed from is reversed and the cause is remanded for a new trial for the assessment of damages only. The court below is directed to assess such damages by deter-

executrix did all the talking. At no time did Mamie deny having entered into the written contract freely and voluntarily with Thomas. Just before leaving the office the executrix said to Thomas that she thought the contract was unfair and the fee exorbitant, but according to the testimony Mamie never made any such statement.

After the executrix left Thomas' office with Mamie she took her to J. M. McCaskill, her own attorney, who wrote Thomas a letter wherein it was stated that Mamie did not recognize the validity of the contract. This letter was signed by McCaskill but not by Mamie. The testimony further shows and there is corroboration by Judge Blanton that after Thomas received the letter he contacted Judge Blanton for the purpose of having him act as arbitrator between the parties, but that for some reason or other this plan was never carried out.

After Thomas had succeeded in having Julia's appeal dismissed, Mamie disposed of lot 16, block 6, Liberty City subdivision, for $4,750. She did not pay or offer to pay Thomas for his services rendered in her behalf.

Shortly thereafter Mamie, through her employer, went to McCaskill's office for the purpose of executing her last will and testament. The executrix testified that when Mamie went to McCaskill's office to execute the will she deliberately stayed away from her home and McCaskill's office on advice of counsel. It developed during the testimony that the executrix, who is a white woman, acquired a half interest in the residue of Mamie's property and was also named a beneficiary under the will.

Mamie died soon thereafter and the defendant caused the will to be probated and was appointed executrix.

From the testimony submitted by the plaintiff it appears that he had never sued a client for fees prior to this occasion, that he was reluctant to start such a suit, that he waited until just immediately prior to the expiration of the statutory period to file his claim against the estate and also waited until the last day on which he could start suit against the executrix.

It is interesting to note that even though the executrix and her attorney contend the plaintiff was guilty of laches prior to Mamie's death, Mamie herself failed to institute suit to void the written or oral agreement.

I have listened attentively to all the testimony in this cause and except for the innuendoes emanating from the defense I can find no semblance of fraud, duress or overreaching on the part of the plaintiff at the time the contract was entered into between attorney and client. It appears that this is another case where the client has enjoyed the fruits of the attorney's labor and after making a written contract freely and voluntarily, attempts to break it because she thinks or is advised she has made a bad bargain and for that reason does not want to live up to it.

It is noteworthy that at no time did Mamie once deny that she had entered into the contract with Thomas freely and voluntarily and without fear, compulsion or restraint.

I further find that at the time Mamie disposed of her interest in lot 16 she expended $610.50 to clear the title.

It is the judgment of this court that L. E. Thomas, plaintiff herein, do have and recover from the defendant, Edith L. Fisher, also known as Edith L. Johnson, executrix of the estate of Mamie L. Brown, deceased, the sum of $4,750 being the value and sale price of the property at the time it was disposed of, less, however, the sum of $610.50 which Mamie L. Brown was required to expend to clear the title and therefore said judgment shall be in the amount of $4,139.50, together with costs here taxed at_____ dollars, lawful money of the United States, for which let execution issue.

mining the reasonable value of the professional services rendered by the plaintiff in behalf of the defendant's decedent in and incident to the litigation mentioned in the pleadings, without regard to the terms or provisions of the written agreement to which reference has been made. Such agreement should be disregarded entirely and accorded no weight or effect as a guide or gauge in evaluating the plaintiff's services.