403 So.2d 401 (1981)
THE FLORIDA BAR, Complainant,
v.
Frank RAGANO, Respondent.
THE FLORIDA BAR.
In re PETITION of Frank RAGANO for Reinstatement.
Nos. 59246, 59457.
Supreme Court of Florida.
July 23, 1981.
Rehearing Denied October 1, 1981.
Scott K. Tozian, Tampa, and John A. Boggs, Bar Counsels, Tallahassee, for complainant.
Michael Kinney of Marlow, Shofi, Ortmayer, Smith, Connell & Valerius, Tampa, *402 Joseph C. Jacobs of Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, and John R. Parkhill, Tampa, for respondent.
PER CURIAM.
These consolidated cases are before the Court by virtue of our jurisdiction to regulate the discipline of persons admitted to the practice of law. Art. V, § 15, Fla. Const. Case no. 59,246 is a disciplinary proceeding against Frank Ragano, a suspended member of The Florida Bar, and is before the Court on the complaint of The Florida Bar, the report of a referee, and the petitions of both parties for review. Case no. 59,457 is a proceeding initiated by Frank Ragano's petition for reinstatement, and is before us upon the report of a referee and The Florida Bar's petition for review thereof.
In case no. 59,246, the disciplinary complaint brought by The Florida Bar, the referee found that in August, 1970, Mrs. Jean Back employed respondent to pursue an appeal of a judgment in dissolution of marriage proceedings. Respondent prepared a written fee agreement pursuant to which he received $5000.00 for representing Mrs. Back on the appeal. The referee found, "The agreement was signed on or about August 10, 1970, at which time the fee agreement contemplated that Mr. Ragano would receive a minimum fee of $5000.00; however, he was going to seek the payment of his fee from Allan L. Back and would reimburse Mrs. Back for any moneys he received up to the $5000.00 from her husband." That is, the respondent represented that Mrs. Back would receive the first $5000.00 in fees collected from her former husband.
Shortly after undertaking representation of Mrs. Back, respondent learned that the judgment of dissolution provided for sale of the marital home and that she was to receive $30,000.00 of the proceeds of the sale. On advice of respondent, Mrs. Back placed this money in trust with him so that it could be held in escrow, thereby avoiding any implied acceptance of or acquiescence in the financial terms of the judgment. The referee reports that this amount was received by respondent on August 21, 1970.
The referee found that on March 20, 1971, Mrs. Back wrote to respondent asking, "Since the case has become more involved, will there be an additional fee charged other than the retainer fee?" Respondent wrote back on March 24, 1971, "I will look to you for no additional fee. If there are any additional fees to be paid, they will be paid by your husband."
The appeal resulted in a remand for further proceedings at the trial court level. Back v. Back, 258 So.2d 20 (Fla.2d DCA 1972). The decision was rendered on February 16, 1972. The respondent testified that some time after the remand, he and Mrs. Back orally agreed that he would receive further fee payments from her, and that he would take the payments from the $30,000.00 he was holding in trust. Mrs. Back denied any such further fee agreement.
In the proceedings held after the remand, respondent presented expert psychiatric evidence that Mrs. Back was in a seriously unstable emotional condition during the earlier proceedings. The purpose of introducing this evidence was to show that she could not have freely and voluntarily entered into a property and support settlement agreement with her former husband, and thereby to have the judgment based on the agreement set aside. The reports that were presented clearly showed that Mrs. Back's emotional problems were of a continuing nature.
The referee found that respondent kept the $30,000.00 in an account named "F. Ragano, Special Account." Beginning in August, 1972, and over a period of about three years thereafter, he made a series of disbursements to Mrs. Back, totaling nearly eight thousand dollars. Respondent also spent $965.00 on the expenses of the litigation. The record contains respondent's itemized list of these expenditures, including the date of each disbursement.
The referee found that "Mrs. Back has made repeated demands on Mr. Ragano for the return of the balance of her $30,000.00, *403 which Mr. Ragano has refused to return... ." The record shows that the first of these demands was made through another attorney in March of 1974. Mr. Ragano's response to these demands was to maintain, as he did before the referee and now maintains before this Court, that the fee agreement was orally modified.
The referee's report contains no specific finding on the factual question of whether there was an oral modification of the fee agreement. His findings on the issue are as follows:
Mrs. Back has made repeated demands on Mr. Ragano for the return of the balance of her $30,000.00, which Mr. Ragano has refused to return, although he has offered on one occasion to return $6,000.00 through an attorney in West Palm Beach as the unearned portion remaining on hand (Exh. No. 10, No. 11, Res.); and on another occasion indicated to the court that there was $10,000.00 remaining. (TR 89).
Mr. Ragano contends that in late 1972 or early 1973, as a result of discovery, he learned that Mr. Back's net worth was such that it would not be likely that he could recover a fee for his services as he had contemplated being able to do. And thereafter, he reached an oral agreement with Mrs. Back that he could use the $30,000.00 towards costs and fees, and that he would ultimately account to her for his fees and expenses. Mrs. Back denies this. Mr. Ragano asserts that he was to have prepared an agreement, reducing to writing, this agreement with Mrs. Back, but he never got around to doing this. This position is also denied by Mrs. Back. Mr. Ragano apparently based his appeal of the Final Judgment of Dissolution of Marriage on the fact that Mrs. Back was in a poor and unstable mental condition at the time of the final hearing; but knowing this condition, he did not deal with her accordingly when he purported to modify his employment and fee agreement. Ragano admitted that it would have been a better course of conduct on his part if he had reduced his alleged oral agreement with Mrs. Back concerning subsequent additional fees to writing.
The record in this proceeding does not reflect any accounting by Mr. Ragano to Mrs. Back on the $30,000.00 deposited with him to hold for her, except his statement that he had earned $10,000.00 or $20,000.00 over and above the $5,000.00 which she had initially deposited with him under their fee agreement. Frank Ragano as the attorney for Mrs. Back pursued her cause with vigor and tenacity, and his legal ability and representation before the Circuit Court and Appellate Court is not an issue in this proceeding. However, as an experienced attorney, he entered into a fee agreement with his client, and after his representation had begun, he entered into a separate agreement with his client to hold separate funds of hers based upon his own recommendation as being necessary to protect her rights on appeal. Well over one year later, Mr. Ragano states that he and client modified the fee arrangement orally when he knew by virtue of dealing with the client and presentations which he had made to the court, that the client had emotional disturbances and was mentally unstable. Under such circumstances, particularly when the client has unequivocally denied any agreement whereby Mr. Ragano would have had a right to use any of the $30,000.00, and had repeatedly requested return of the $30,000.00, the conduct of Mr. Ragano is subject to the closest scrutiny for overreaching or unfairness. Halstead v. Florence Citrus Grower's Association, 139 So. 132 (Fla. 1932).
Frank Ragano in the instant case, knowing of the emotional and unstable mental condition of Mrs. Back (TR 85, 86, 87), violated the Integration Rules of The Florida Bar and the Disciplinary Rules of the Code of Professional Responsibility in that if a new fee arrangement was arrived at while he was in the employment of Mrs. Back, he failed to deal with her at arms length and reduce to writing said agreement, although he had taken the *404 precaution to do so upon his initial employment. His conduct is particularly subject to question because he was holding $30,000.00 of Mrs. Back's money for safekeeping upon his own recommendation that it be turned over to him. Thereafter he failed to deliver the $30,000.00 to her when requested, and he did not set up the necessary trust account, as required by Integration Rules of the Florida Bar.
The referee found that respondent violated the Integration Rule, article XI, rules 11.02(4)(a) and 11.02(4)(b). The referee also found that respondent violated the Code of Professional Responsibility, Disciplinary Rules 9-102(A)(2), 9-102(B)(3), and 9-102(B)(4).
Integration Rule, article XI, rule 11.02(4)(a) requires that trust funds be kept in a separate account "clearly labeled and designated as a trust account."
Integration Rule, article XI, rule 11.02(4)(b) pertains to trust account record keeping and requires that attorneys keep "records clearly and expressly reflecting the date, amount, source, and reason for all receipts, withdrawals, deliveries, and disbursements of the funds or property of a client."
Disciplinary Rule 9-102(A)(2) provides:
DR 9-102. Preserving Identity of Funds and Property of a Client
(A) All funds of clients paid to a lawyer or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable bank or savings and loan association accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
.....
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
Disciplinary Rule 9-102(B)(3) provides:
(B) A lawyer shall:
.....
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
Disciplinary Rule 9-102(B)(4) provides:
(B) A lawyer shall:
.....
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.
The finding that respondent violated Rule 11.02(4)(a) by depositing the trust money in an account not clearly labeled and designated a trust account is supported by clear and convincing evidence. The referee's findings of the remaining violations are not so clear and require further analysis and discussion.
The referee recommended that respondent "be suspended from the practice of law in Florida for a period of three (3) months, or until such time as he renders an appropriate accounting of the $30,000.00 which he admitted receiving from Mrs. Jean Back, to Mrs. Back and The Florida Bar." Both parties seek review of the recommended discipline. The Florida Bar argues that the discipline is too lenient under the facts of the case. The respondent finds fault with the indefinite nature of the recommended discipline. He asserts that its effect would be to compel him to refund an earned fee in order to retain the privilege of practicing law, and asserts further that the controversy over the $30,000 is a "fee dispute" more appropriately to be settled in civil than in disciplinary proceedings.
Florida Bar Integration Rule article XI, Rule 11.02(4) provides in part:

*405 (4) Trust funds and fees. Money or other property entrusted to an attorney for a specific purpose, including advances for costs and expenses, is held in trust and must be applied only to that purpose. Money and other property of clients coming into the hands of an attorney are not subject to counterclaim or setoff for attorney fees, and refusal to account for and deliver over such property and money upon demand shall be deemed a conversion. This is not to preclude the retention of money or other property upon which the lawyer has a valid lien for his services or to preclude the payment of agreed fees from the proceeds of transactions or collections. Controversies as to the amount of fees are not grounds for disciplinary proceedings unless the amount demanded is clearly excessive, extortionate, or the demand is fraudulent.
In order for the referee to have concluded that respondent's actions regarding the money he held in trust warrants disciplinary action with restitution as part of the judgment, he would have had to find that respondent's fee claim was "excessive, extortionate, or ... fraudulent." Moreover, the provision of Rule 11.02 that funds held in trust are not subject to set-off or counterclaim is qualified by the provision that payment of agreed fees from funds so held is not precluded. Therefore the whole question of whether the respondent's conduct regarding the disposition of the $30,000.00 warrants discipline depends upon a factual finding of whether there was an oral modification of the fee agreement.
As was observed above, the report of the referee does not specifically find one way or the other on this crucial factual issue. The referee's conclusion that discipline is warranted is based on an inference from the circumstances that it was highly probable that respondent was guilty of some overreaching. In the absence of a specific finding of overreaching or fraud, supported by clear and convincing evidence, there is no basis upon which to find the ethical violations or to require restitution.
The finding of a violation of Rule 11.02(4)(a) is supported by clear and convincing evidence and is approved. The findings of violation of Rule 11.02(4)(b) and Disciplinary Rule 9-102(B)(3), both pertaining to record keeping, are not so supported and are disapproved. The findings of violations of Disciplinary Rules 9-102(A)(2) and 9-102(B)(4) cannot be approved in the absence of a finding on the issue of whether or not there was a further oral agreement on the payment of fees and expenses from the $30,000.00. We agree with the referee, of course, that Mrs. Back has a legal right to a precise accounting of the money, but the enforcement of that right is not the function of this Court in disciplinary proceedings.
Taking into consideration the respondent's disciplinary history, we conclude that the appropriate discipline for the misconduct found in this proceeding is a three-month suspension from the practice of law, followed by a two-year period of probation, and we hereby impose such discipline. We decline to make reinstatement conditional upon "an appropriate accounting" because the question of the parties' respective rights to the $30,000 is a controversy over fees and therefore is not ground for discipline "unless the amount demanded is clearly excessive, extortionate, or the demand is fraudulent." Fla.Bar Integr.Rule, art. XI, Rule 11.02(4). That is not to say that Ragano is not obliged, as any attorney, to account to his client for funds delivered to him.
In case no. 59,457, the reinstatement proceeding, the referee found as follows:
1. The crime of income tax evasion of which the petitioner was convicted did not result from an attorney-client relationship nor did it involve the misappropriation of any client's funds, any act of malpractice or any act of violence. That, further, the petitioner has been convicted of no other criminal offense, has successfully completed a term of probation and has obtained the restoration of his civil rights.
2. That during the term of active practice of the petitioner he enjoyed a *406 reputation among the judges, attorneys and public officials of Hillsborough County of legal scholarship, competency of practice and integrity in his dealings with other lawyers and the courts. That since his suspension the petitioner has worked to maintain his competency in the law.
3. That on and after the date of his suspension from the practice of law the petitioner has adhered to the provisions of the disciplinary order. In such regard the Referee takes note that this Court did not find that the offense of which the petitioner stood convicted warranted disbarment.
4. That notwithstanding that the petitioner does not agree with his prosecution for tax evasion from the standpoint of the application of the law to the particular facts which occasioned such prosecution, the petitioner appears to bear no malice resulting therefrom. Additionally he has demonstrated a scene [sic] of repentance and rehabilitation which leads this Referee to conclude that he will be involved in no criminal activity in the future.
5. That the petitioner has demonstrated through his own testimony a dedication to the scholarship of the law and a true desire to regain a position of respect within the legal community. This Referee therefore concludes that in the event petitioner is reinstated to the practice of law, he will conduct his dealings with clients, attorneys and the courts in a sincere, competent and careful manner consistent with the Code of Professional Responsibility.
In arriving at the foregoing conclusions the Referee is mindful of the fact that there are judgments outstanding against the petitioner, that there is now pending before this Court a separate disciplinary proceeding and that during the early term of his suspension the petitioner conducted his checking account privilege with several banks in less than a commendable fashion. It is upon these grounds that the representative of the Florida Bar has opposed this Petition. The Referee has in no way considered the pendency of other disciplinary proceedings which as of this date remain unresolved nor the merits of the facts giving rise to such proceedings.
In regard to the outstanding judgments it appears that the petitioner, during his lifetime, has demonstrated no ability to generate income in any endeavor other than the practice of law and currently lacks the financial ability to satisfy such obligations. For such reason the Referee concludes that the non-payment of such obligations does not constitute grounds for denial of the Petition.
The mishandling of the petitioner's checking account privileges raises a more serious question as to whether or not he meets the legal criteria for reinstatement. Were these practices to be occurring on a continuing basis today or had they occurred without reasonable explanation in the recent past, the recommendation of the Referee might well be different from that reflected herein. In finding that such matters should not prevent the petitioner's reinstatement, the Referee concludes that such practices resulted from the emotional unrest of the petitioner resulting from his suspension and suddenly finding himself without the ability to earn a living and without the apparent skills to readily engage in another income generating occupation.
It is noteworthy that petitioner within a reasonable time recognized the errors of his thinking, took steps to repay the amounts owed and ceased such practices. The petitioner has testified that he does not now maintain a checking account. The Referee thus concludes that the petitioner can take no further steps to rehabilitate himself in respect to such practices, has in fact rehabilitated himself therefrom and that the passage of additional time from the date of such practices would be of no useful purpose to either the petitioner or this Court.
The Referee further recognizes that the Florida Bar in its active opposition to the Petition has been unable to produce any witnesses to testify contrary to the conclusions of the petitioner's witnesses.

*407 It is the finding of the undersigned Referee that the Petitioner, Frank Ragano, meets the criteria for reinstatement and it is my recommendation that the Petition for Reinstatement be granted upon such conditions as this Court shall find to be just.
We approve the findings of the referee and the recommendation that Frank Ragano be reinstated to the practice of law, after serving the additional period of three months suspension imposed in case no. 59246.
Having reviewed the proceedings in both cases, and taking into consideration respondent Frank Ragano's disciplinary history, we hereby order that his suspension from the active practice of law shall continue for three months from the date of this order. At that time he will be automatically reinstated, subject to a probationary period of two years. During the probationary period, Mr. Ragano shall file confidential quarterly reports with the Executive Director of The Florida Bar. These reports shall state the current balance of all trust accounts maintained by Mr. Ragano, together with a statement of the source of each deposit therein and a description of the transaction in connection with which each deposit is received. Mr. Ragano shall also report on the status of all legal proceedings, now pending or newly instituted, in which he is named as a defendant. Furthermore, Mr. Ragano, within 30 days of the date this opinion is filed, shall supply to Mrs. Back and The Florida Bar a full and complete written accounting of the $30,000 fund delivered to him by Mrs. Back or at her direction.
We also assess the costs of both of these proceedings against Mr. Ragano in the amount of $1,0220,40.
It is so ordered.
SUNDBERG, C.J., and BOYD, OVERTON, ENGLAND and McDONALD, JJ., concur.
ALDERMAN, J., concurs in part and dissents in part with an opinion.
ADKINS, J., dissents: "I would not add the additional three months suspension, nor would I require reports of the trust accounts."
ALDERMAN, Justice, concurring in part, dissenting in part.
I agree, in case No. 59,246, that Mr. Ragano should receive an additional three months' suspension. In case No. 59,457, however, because of the additional misconduct that occurred after he was suspended, I would deny Mr. Ragano's petition for reinstatement.