DELL, Judge.
This consolidated appeal arises out of five orders entered in the Estate of Leo Goodwin, Sr. that concern accountings and the award and payment of personal representative and attorney’s fees.
Leo Goodwin, Sr. died on May 21, 1971, leaving a gross estate with a value of approximately $60,000,000, and a probate estate valued at approximately $17,500,000. Appellee Alphonse Della-Donna (Della-Donna), an attorney and CPA, had prepared for Leo Goodwin, Sr. an estate plan that consisted of a unitrust, a general trust, a will, and two charitable foundations. On May 21, 1971, Leo Goodwin, Sr. executed the last instrument in the estate plan. He died one week later.
In June, 1971, the probate court issued letters testamentary to Leo Goodwin, Jr., the decedent’s only son. Leo Goodwin, Jr. retained the law firm of Sturrup & Della-Donna to represent him as personal representative of his father’s estate. In 1977, Leo Goodwin, Jr.’s son, Leo Goodwin, III, died leaving as his only heir his daughter, Elizabeth Anne Goodwin. In 1978, Leo Goodwin, Jr. died. Leo Goodwin, Jr.’s estate and appellee Elizabeth Anne Goodwin are the beneficiaries under the terms of Leo Goodwin, Sr.’s will. When Leo Goodwin, Jr. died, Della-Donna became successor personal representative of Leo Goodwin, Sr.’s estate and continued as attorney for the estate.
Appellant Alan J. Goldberg, the personal representative of the estate of Leo Goodwin, Jr., has appealed five orders related to accountings and the award and payment of personal representative fees and attorney’s fees to appellee Della-Donna. Initially, both beneficiaries objected to the payment of the fees. However, shortly before trial *611 Della-Donna and appellee Elizabeth Anne Goodwin (the 25 percent beneficiary) entered into a stipulation that limited her liability for the payment of the claimed personal representative and attorney’s fees to the sum of $150,000. The trial court approved the stipulation and denied Goldberg’s objection to the payment of fees pursuant to the stipulation. These orders are the subject of Case No. 85-5 and Case No. 85-6. We reverse.
Case No. 84-2280 arises out of an order that provided, inter alia, that Goldberg’s objections to the interim accountings for the period January 1,1979, through May 1, 1980, had been withdrawn and were therefore no longer at issue. The order overruled all remaining objections to the interim accountings, with the exception of the objections to disbursements made June 1, 1975, through December 31,1978, and June 1, 1980, through May 31, 1982. The order approved all interim accountings other than those expressly exempted. We reverse.
Case No. 84-2629 is an appeal from an order that overruled appellant’s objections and approved accountings filed by the personal representative for the periods January 16, 1978, through December 31, 1978; June 1, 1980, through May 31, 1982; and June 1, 1982, through May 31, 1983. We reverse.
Case No. 85-536 seeks reversal of a final order that awarded Della-Donna the sum of $600,000 as compensation for personal representative services from 1978 through 1984, and attorney’s fees of $190,000 for services from December 1,1981, to November 5, 1984, and directed payment of these sums. We reverse.
The probate court, sitting in its trial capacity, summarized the events leading to these appeals in the order that is the subject of the appeal in Case No. 85-536.
The estate presented a number of complex questions including a determination of the validity of the Unitrust by the I.R.S. If I.R.S. had held the Unitrust to be invalid, it would have increased the estate taxes by approximately $18,000,-000. In order to pay estate taxes, costs of administration, debts of decedent and other expenses, a secondary offering of GEICO, a restricted stock owned by decedent, who was the founder of the company, and the primary asset of the Uni-trust and General Trust was necessary. This was accomplished in May, 1972 and raised approximately $36,000,000. From these funds, approximately $12,200,000 was paid for estate taxes, $3,000,000 for debts, $1,900,000 for cost of the secondary offering, and $1,100,000 for Trustee’s fees to Leo Goodwin, Jr. and The Riggs National Bank of Washington, D.C., as Trustees of the General Trust.
At the same time, Mr. Goodwin, Jr. and Mr. Della-Donna agreed to an attorneys’ fee of $950,000, which included preparation of the federal estate tax return. An order approving payment of the $950,000 fee was entered on May 2, 1972. The fee was disbursed as follows: $750,000 as attorneys’ fees to the law firm of Sturrup & Della-Donna and $200,000 to Lester Witte & Co., an accounting firm in which Mr. Della-Donna was a principal partner. The accounting firm had handled all of Mr. Goodwin, Sr.’s business interests prior to his death, had computerized decedent’s books and records, and prepared the estate tax return under the supervision of Mr. Della-Donna.
The May 2, 1972 Order also provided for a fee of $450,000 to Mr. Goodwin, Jr. as Executor of decedent’s estate. This was the statutory fee for ordinary services based upon a probate estate of approximately $17,500,000. See Chapter 734.01, Florida Statutes (1971).
[[Image here]]
The estate tax return was audited by I.R.S. and the audit lasted about two years. A “90-day letter” was issued by I.R.S. in May, 1975 wherein a tax deficiency of approximately $8,000,000, plus interest, was asserted....
The law firm of Hogan & Hartson, Washington, D.C., was retained in May, 1975, as co-counsel with Sturrup & Della-Donna. In August, 1975, petitions were filed in the United States Tax Court con *612 testing the tax deficiencies asserted by I.R.S.
In November, 1975, Mr. Goodwin, Sr.’s estate was ready to be closed except for the pending tax litigation in the United States Tax Court. The tax litigation was to be handled by Hogan & Hartson with Mr. Della-Donna as lead counsel to approve all work done by Hogan & Hartson in the tax litigation. In November, 1975, Mr. Della-Donna and Mr. Goodwin, Jr., as Executor, entered into a written fee agreement providing that the $950,000 fee paid previously did not cover any litigation in any court after September II, 1975 and that Sturrup & Della-Donna would represent the Executor at a reduced rate of $50 per hour for litigation in the state and federal courts. The November, 1975 fee agreement was terminated after May, 1976, when Mr. Goodwin, Jr. and Mr. Della-Donna became aware of certain information affecting Hogan & Hartson and Mr. Goodwin, Jr. decided that Mr. Della-Donna should retake control of the tax litigation. Mr. Goodwin, Jr. and Mr. Della-Donna also decided that it was in the best interest of the estate to retain additional tax counsel and, in the Fall of 1976, Mr. Della-Donna retained the law firm of Is-ley & DeReuil, Fort Lauderdale, as additional co-counsel in the tax litigation.
[Emphasis added].
Appellant contends that the evidence does not support the trial court’s finding that Mr. Goodwin, Jr. and Della-Donna terminated the 1975 written fee agreement. Appellant also contends that the court erred by failing to supervise attorney’s and personal representative fees; by restricting and denying the beneficiaries’ objections to attorney’s fees; by failing to place the burden on the personal representative’s attorney to justify his fees; and by failing to consider the duplication of fees earned by Della-Donna during the course of this estate proceeding. Appellant next argues that the fees awarded are grossly excessive and do not constitute reasonable compensation for Della-Donna’s services. Finally, appellant claims that the trial court erred in awarding Della-Donna fees pursuant to the settlement agreement with Elizabeth Anne Goodwin.
In July, 1983, appellant deposed Della-Donna and requested production of the written fee agreement. Della-Donna did not produce the agreement until the pre-trial conference, more than a year later. At that time the trial judge inspected the document without disclosing its contents to appellant, and entered an order requiring Della-Donna to provide a copy of the agreement to appellant within two days. Appellant received the agreement approximately eleven days before trial. The November 6, 1975, written agreement provided:
FEE ARRANGEMENT IN RE: Estate of Leo Goodwin, Sr. (5-21-71)
Leo Goodwin, Jr., the Executor of the above estate, and this firm agree to the following:
1. The fee paid to this firm ($950,-000.00) for legal and accounting (including preparation of Form 706 — Estate Tax Return) for the above captioned estate shall encompass:
(i) Any and all necessary work concerning the probate of said estate from inception, 5/28/71, to its closing.
(ii) Representation before the Federal 1.R.S., Agent and Appellate level, and the filing of the Petitions to the U.S. Tax Court, Docket No.: 7171-75 (August 1, 1975); Docket No.: 8378-75 (September 11, 1975).
2. (i) The above fee does not include any litigation in any State or Federal Court on any matter directly or indirectly relating to the Estate (including the defense of any return filed for said estate).
(ii) For work to be performed under 2(i) above, the firm shall be compensated at the reduced hourly rate of $50.00 per hour, plus costs and expenses.
At the beginning of trial, appellant moved for a continuance and for leave to amend the pleadings and the objections to the ac-countings in order to raise the written fee agreement. The trial court denied appellant’s motions.
*613 Della-Donna provided the only testimony concerning the fee agreement. On cross-examination, Mr. Della-Donna testified:
Q. Tell me as best you can the substance of the oral agreement to modify the November 6th, 1975 document.
A. Well, obviously when Leo Goodwin, Jr. became aware of the conflict of interest and he himself was very—
Q. Mr. Della-Donna, my question is, tell me the substance of the oral understanding reached that modified the November, 1975—
A. We went back to the same arrangements we had before. I mean, the reasonable fees, whatever was supposed to be—
Q. Mr. Della-Donna, what did Mr. Goodwin, Jr. say and what did you say when this November agreement was modified, when it was agreed it would be modified?.
A. I don’t remember what he said in so many words.
[[Image here]]
THE COURT: Okay, and this — this modified that or clarified or did something about it?
COUNSEL: Right, and now I’m asking him, did they modify or change this modification or clarification and he’s telling me there was an oral modification—
THE COURT: Okay
COUNSEL: —and all I want to know is the substance of the oral modification. What did Leo Goodwin, Jr. say? What did Mr. Della-Donna say? And what did they agree to? That’s all I want to ask.
A. I wish I had a tape recording of the conference. I believe that we were more concerned about the set-back because of this disclosure of interest, how much harm had been done already. We already lost the foundation because of the conduct of The Riggs and Hogan & Hart-son and so obviously we didn’t concentrate really on our so-called service because we never had any arguments about legal fees with Leo Goodwin, Jr.
It’s obvious that whatever service we rendered we rendered on a basis of we filed — we submit invoices not every month, every three months maybe, every five months or six months sometimes and he okayed it. Now, then we had discussions about what this is. We even showed him the computerized time sheets if it was necessary.
Q. Are you saying then that there was no specific oral agreement reached to modify? It’s just that you submitted invoices at a higher rate than discussed in this modification here and Mr. Goodwin, Jr. paid them?
A. I consider that a modification.
Q. I see, a modification by conduct, in other words? Is that it?
A. I stand on my testimony. You have a way of paraphrasing all my testimony. I think I’d rather stand on my answers.
This testimony alludes to a modification, but nothing in the record establishes the terms of the alleged modification, the fairness of the alleged modification, or if a modification occurred, that it occurred after full disclosure. (See the discussion of Reid v. Johnson, 106 So.2d 624 (Fla. 3d DCA 1958), infra.) The trial court, based upon its conclusion that the parties terminated the 1975 written agreement, approved attorney’s fees in the amount of $190,000 for the period from December 1, 1981, to November 5, 1984. The total attorney’s fee award to Della-Donna in the estate proceedings exceeded $1,500,000. Appellant does not dispute the trial court’s approval of the initial payment of attorney's fees in the amount of $950,000. Appellant does dispute the amount of attorney’s fees awarded after execution of the agreement, and also challenges the court’s award of personal representative fees to Della-Donna in the total amount of $700,-630.
Della-Donna argues that the trial court properly denied appellant’s motion for leave to amend objections to interim ac-countings because the motion constituted an attempt to file untimely objections. He further contends that appellant’s failure to timely appeal the September, 1983, order denying the motion bars a challenge to that order at this time. Appellant argues that *614 the trial court should have granted leave to amend the pleadings and the objections to the prior accountings to raise the written fee agreement. The September, 1983 order was predicated upon a stipulated conditional withdrawal of objections to accountings for the periods January 1, 1979, through May 31, 1979, and from June 1, 1979, through May 31, 1980. This stipulation and order related to objections concerning fees and expenses resulting from a controversy with Nova University, and to the deductibility of various attorney’s fees and expenses on the estate’s federal income tax return. The 1975 fee agreement was not in issue when the court entered its September, 1983, order because Della-Donna had not produced it. Therefore we find no merit in Della-Donna’s argument that the trial court’s September, 1983, order barred appellant from amending his objections to previous accountings in order to raise the 1975 written fee agreement.
The trial court, under the statute and case law hereinafter set forth, had the authority and the duty to review the attorney’s fees awarded to Della-Donna. Section 733.6175, Florida Statutes (1981) provides:
733.6175 Proceedings for review of employment of agents and compensation of personal representatives and employees of estate. — After notice to all affected interested persons and upon petition of an interested person bearing all or part of the impact of the payment of compensation to the personal representative or any person employed by him, the propriety of such employment and the reasonableness of such compensation or payment may be reviewed by the court. The burden of proof of propriety of such employment and the reasonableness of the compensation shall be upon the personal representative and the person employed by him. Any person who is determined to have received excessive compensation from an estate for services rendered may be ordered to make appropriate refunds.
In Reid v. Johnson, 106 So.2d 624 (Fla. 3d DCA 1958) the third district, quoting the Florida Supreme Court, stated:
In Halstead v. Florence Citrus Growers’ Ass’n, 104 Fla. 21, 139 So. 132, 136, the Supreme Court set forth the following principles pertaining to contracts between attorneys and clients:
“It may also be stated here that the rule applicable to express contracts entered into between attorney and client at or before the time of employment as to fees to be paid is usually governed by the ordinary rules as between other competent parties (6 C.J. 935, § 309), but where any agreement is entered into between client and attorney during the existence of the relation, while not presumptively void, the burden of showing fairness where the question is raised rests upon the attorney (6 C.J. 735, § 310) ...”
Id. at 627.
In Sheffield v. Dallas, 417 So.2d 796 (Fla. 5th DCA 1982), a successor personal representative objected to attorney’s fees included in the prior personal representative’s final accounting. The successor personal representative filed his objections to the accounting more than thirty days after the date of service. The district court rejected the prior personal representative’s argument that the accounting became final because of the lack of a timely objection. The court stated:
The accounting filed by Sheffield was not a final accounting under the applicable rule. At the time Sheffield was replaced as personal representative, the estate had not been fully administered except for distribution, as clearly contemplated by the rule. Therefore, the objection to the attorney fee for representing the wrong personal representative-which fee was approximately one-fourth of the entire estate-was not untimely, and it was entirely proper for the trial court to hold the May 28th hearing on the reasonableness of the fee.
Indeed, even in the absence of a timely objection or any objection, it is the statutory (and inherent) obligation of the trial court to review and determine the reasonable amount of compensation to be paid to an attorney for a personal repre *615 sentative in a probate proceeding. § 733.617, Fla.Stat. (1981).
Id. at 798. (footnote omitted).
We agree with the Sheffield court’s conclusion that the trial court had authority to conduct a hearing on the objections to the fees since the estate had not been fully administered. The facts in the instant case are similar to those before the court in Sheffield. Here the estate has not been fully administered. Also, appellant filed objections and later moved to amend his objections to raise the 1975 fee agreement; however the trial court apparently concluded that the amended objections were untimely. The trial court should have recognized that the 1975 agreement, if enforceable, would require a review of the previous award of fees to determine whether an overpayment had occurred. However, the trial court denied appellant’s motion to amend, before it determined whether the agreement was enforceable, effectively cutting off appellant’s challenge to the prior attorney’s fee awards.
While we recognize that the written fee agreement did not apply to personal representative fees, we believe that the existence of that agreement, its effect for some period of time, and its alleged later modification affected the entire proceeding. The record does not contain sufficient evidence to support the amount of time claimed for attorney's fees and for personal representative fees. The trial court should have determined whether a duplication of fees occurred as a result of Della-Donna’s services as personal representative and his law firm’s services as attorney for the personal representative.[1] Since Della-Donna and his law firm also performed services on matters related to the estate proceedings such as the Nova litigation, the unitrust, and the two charitable foundations, the trial court should have taken into account fees earned in the representation in these matters to avoid any duplication of charges. Therefore we reverse the orders that are the subject of the appeals in Case Numbers 84-2280, 84-2629 and 85-536.
Finally, we address appellant’s claim that the trial court erred when it approved and awarded fees to Della-Donna pursuant to the settlement agreement reached with Elizabeth Anne Goodwin. Appellant has standing to challenge the propriety of these orders pursuant to section 733.6175, Florida Statutes (1983). The stipulation limiting Elizabeth Anne Goodwin’s obligation for payment of Della-Donna’s personal representative and attorney’s fees to the sum of $150,000 provides in part:
3. Alphonse Della-Donna, as Personal Representative, agrees that the interest of Elizabeth Anne Goodwin in decedent’s estate shall not be charged with any additional amount for Personal Representative’s compensation and for attorneys’ fees, regardless of the total amount of the award (i) for Personal Representative’s compensation (to Alphonse Della-Donna) and (ii) for attorneys’ fees (to Robert J. O’Toole, Esq. and Sturrup & Della-Donna, P.A.) which might be entered by the court.
The trial court’s orders simply approve the stipulation and award fees without making provision for fees that may be chargeable against Elizabeth Anne Goodwin’s share of the estate in excess of the amount provided for in the stipulation. Therefore, should the ultimate determination of personal representative and attorney’s fees be such that a portion in excess of the stipulated amount would be chargeable against Elizabeth Anne Goodwin’s interest in the estate, the stipulation and order would shield her interest in the estate from such liability. Since the total amount of personal representative fees and attorney’s fees, and for that matter the amount of Elizabeth Anne Goodwin’s share in the estate, has not been finally determined, we hold that the order approving the settlement and awarding fees pursuant thereto was prematurely entered and must be reversed.
*616 In summary, we hold that the trial court erred when it failed to determine and adjust the award to avoid any duplication of fees earned by Della-Donna and his law firm as personal representative and attorney in this proceeding with fees awarded for services performed by them in other matters related to this estate. We also hold: that Della-Donna bears the burden of proving by competent evidence the amount of time expended by him as attorney and personal representative of the estate as well as the burden of demonstrating that he performed services constituting extraordinary as compared to ordinary services; Della-Donna also has the burden of proving the modification of the written fee agreement and the effect on fees of any such modification. We reverse the orders approving interim accountings and awarding personal representative fees and attorney’s fees and the orders approving the stipulation and awarding payment of fees from Elizabeth Anne Goodwin’s share of the estate. We remand this matter for a new trial on all issues consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART and REMANDED.
HERSEY, C.J., concurs.
ANSTEAD, J., dissents in part with opinion.

. Including any duplication of fees that may have resulted from Hogan & Hartson’s represen-tating the personal representative since they were associated in this case by Della-Donna.