98 So.2d 493 (1957)
Kingsley H. GERLACH, Appellant,
v.
Jess Stanley DONNELLY, as Executrix under the Last Will and Testament of Emmett Donnelly, deceased, Appellee.
Supreme Court of Florida.
November 20, 1957.
*494 Arthur A. Simpson, of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellant.
Boone D. Tillett, Jr., Lake Wale, for appellee.
DREW, Justice.
Emmett Donnelly, a member of the Bar of Florida, was arrested on June 8, 1954 for complicity in a conspiracy to murder Kingsley H. Gerlach, his client of more than 23 years. A search was made of Mr. Donnelly's office at the time of his arrest and in his safe the sheriff found two promissory notes bearing the signature of Kingsley H. Gerlach. Both were demand notes payable to Emmett Donnelly. One for $20,000 was dated April 21, 1950 and the other for $12,000 was dated April 19, 1952 and each provided for interest at 5% per annum until paid. At the time of the search Mr. Gerlach was on the outside of the office of Mr. Donnelly. The sheriff testified that Mr. Donnelly made no comment when asked about the notes but when they were exhibited to Mr. Gerlach, the sheriff said "I remember Mr. Gerlach being very much offended at the presence of those notes and he made some remark and those notes seemed to disgust him." The notes were retained by the authorities as evidence.
Mr. Donnelly was released on bond. Sometime during the following day, he died of gunshot wounds which were  in the opinion of the authorities  self-inflicted.
During the latter part of the month this suit was instituted for the purpose of cancelling the two notes. Gerlach alleged in his complaint that Donnelly had acted as his attorney for many years and had handled many legal transactions for him; that during said time he, the said Gerlach, had signed numerous documents prepared by the said Donnelly and submitted to him for signature. He further alleged that he had the utmost confidence in Donnelly and because of this he signed many documents without reading them. He alleged that he never knew of the existence of said notes until June 8, 1954. Gerlach further alleged that he was not indebted to Donnelly in any amount whatsoever and that said notes were obtained from him in some manner unknown to him and, if signed by him, he had no knowledge or recollection of ever having signed the same.
The executrix answered asserting that the notes which were the subject matter of the litigation here were in the possession of the county solicitor of Polk County; she asserted her lack of knowledge of many of the allegations in the complaint and denied others. She directly alleged that Emmett Donnelly was for a number of years a practicing attorney at Lake Wales, Florida and that during said period of time handled various and sundry legal transactions for the plaintiff Gerlach. She further alleged that the said Gerlach executed the said two notes, describing them.
On the issues so made the cause was tried before the circuit judge and resulted in a decree holding that the signatures on the promissory notes were the genuine signatures of plaintiff Gerlach and further "that the plaintiff has failed to prove his case by the greater weight of the testimony; that this suit is based on two promissory notes, one for $20,000 and one for $12,000, both of which are presumptively valid and based on a good and sufficient consideration. The burden of proving lack of consideration and that the signatures were not the plaintiff's thereon is on the plaintiff which he has failed to sustain." The court thereupon decreed that the relief prayed for be denied and dismissed the complaint at the cost of plaintiff. It is from *495 this decree that this appeal has been prosecuted.
The essential facts developed at the hearing of this cause and pertinent to its ultimate disposition are as follows: In the early part of 1954 the appellant Gerlach learned of the alleged existence of a conspiracy on the part of Donnelly and others to murder him. He was placed under the surveillance of guards while the investigation of the conspiracy was being made by the law enforcement agencies.
Early in March, 1954, realizing the necessity of procuring legal advice, he employed Mr. Chester Ferguson of Tampa and related the facts to him. Mr. Ferguson testified that after taking the necessary precaution of preparing a new will and revoking any possible outstanding powers of attorney and having Mr. Gerlach execute them, he forwarded to Mr. Donnelly a letter advising Mr. Donnelly of his employment by Mr. Gerlach and requesting the delivery of any of Gerlach's papers in the possession of Donnelly. Among other things this letter stated: "On questioning Mr. Gerlach he stated that he had paid all bills for services rendered by you to date and that he was not indebted to you in any amount whatsoever. So that this may be a matter of record, I will appreciate your confirming this fact." A few days later Mr. Donnelly replied to the letter stating, "Mr. Gerlach is not indebted to this office for any current legal services." Parenthetically, it should be here observed that at the time of this exchange of correspondence and of several letters which followed in rapid succession relating to various matters and sundry papers belonging to Gerlach and in the possession of Mr. Donnelly, Mr. Ferguson had no knowledge whatever of the existence of said notes nor, according to the positive testimony of Mr. Gerlach, did he. Mr. Ferguson further testified that in addition to the letter he received from Mr. Donnelly above mentioned, that Mr. Donnelly telephoned him in this general period of time inquiring as to why Mr. Gerlach had employed other counsel. During the course of this conversation Mr. Ferguson testified, "I wanted to be certain that Mr. Gerlach was not indebted to him in any way because I didn't want to represent a client that was indebted to another lawyer and my recollection is that Mr. Donnelly assured me that Mr. Gerlach didn't owe him anything." This conversation took place and these letters were exchanged in March and April of 1954 whereas the notes which were the foundation of this cause of action were not discovered until the arrest of Mr. Donnelly the following June 8th. It is pertinent to observe and we reiterate that at the time they were discovered, Mr. Donnelly refused to discuss them saying that he did not desire to do so until he had consulted his attorney. Donnelly, of course, knew at that time that he was under indictment for conspiracy to murder Mr. Gerlach. Moreover Mr. Gerlach testified that he had paid Donnelly from time to time "many thousands of dollars" for legal services rendered for him. The last payment made to Mr. Donnelly was in June of 1952 in the sum of $1,500, at which time Mr. Gerlach also paid Mr. Donnelly $100 for expenses in connection with a trip concerning a case in the Supreme Court. Moreover, an extensive investigation was made of the records of Mr. Donnelly, following his apparent suicide, by accountants employed for that purpose. No credible evidence was found among Donnelly's books, records or possessions which in any way sheds any light upon or relates to these outstanding obligations. Mr. Donnelly kept no detailed records of accounts. There was no transaction among those handled for Mr. Gerlach upon which it could be inferred that any such fee could have been logically earned. Although these notes were apparently in existence, one for at least four years prior to Mr. Donnelly's death, and the other for two years, he had never mentioned their existence or the fact that he possessed them to any of his friends or associates. On occasions he had mentioned some sort of indebtedness from Gerlach but this evidence is so vague and inconclusive as to have little if any probative *496 value. During the whole period of time that these notes were in the possession of Donnelly, no demand was ever made for payment nor was any interest ever paid thereon. The record further establishes that during this whole period of time Mr. Gerlach had on deposit in the local bank an average daily balance in an amount in excess of that due upon said obligations, both principal and interest.
It is suggested in the answer that these notes represent an amount due for legal services and were executed to secure the payment thereof. There is no suggestion in the record that the relationship of these parties was anything other than attorney and client. The testimony of a witness for the executrix  an attorney who was called by Mr. Donnelly in the early stages of the investigation of the conspiracy  was that Mr. Donnelly had intimated to him that Mr. Gerlach was indebted to him for a substantial sum of money for services in connection with a legal matter arising out of a claim against his brother's estate and in connection with other litigation between Gerlach and his wife. No suggestion is made in this record that this obligation, if actually one existed, was other than for services growing out of the relationship of attorney and client.
We think the lower court misconstrued the legal effect of the evidence before it and placed too great an emphasis on the proposition of the presumptive validity of these notes which he found to be signed by Gerlach. The evidence amply supports the finding of the lower court that the notes were actually signed by Gerlach but the record does not support the conclusion that Gerlach had any knowledge or recollection of signing the notes or that they represented any legal obligation of Gerlach to Donnelly. The prima facie case made by introduction of the notes in evidence was overcome by the testimony of Mr. Ferguson and Mr. Gerlach and the witnesses who testified for him.
The executrix of Donnelly's estate stands in no better position than Donnelly would have stood had he not died and had this litigation been between him and Gerlach. So far as this case is concerned, it is a suit between the original maker and payee of a promissory note. All defenses which would have been available between the parties to the note are available here. No question of a holder in due course is in any way involved in this litigation.
Section 674.18, Florida Statutes 1955, F.S.A. which raises the presumption of delivery of a promissory note, by its very terms limits its effect. The statute provides:
"When incomplete and revocable
"Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party other than a holder in due course, the delivery in order to be effectual must be made either by or under the authority of the party making, drawing, accepting or indorsing, as the case may be; and in such case the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument. But where the instrument is in the hands of a holder in due course a valid delivery thereof by all parties prior to him so as to make them liable to him is conclusively presumed. And where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved." (Emphasis added.)
The statute provides that the presumption exists only until the contrary is proven. Ergo, the presumption falls in the face of direct proof. Gerlach's testimony that he never knowingly signed the notes *497 nor knew of their existence until they were discovered upon Donnelly's arrest and that he owed nothing to Donnelly; Ferguson's testimony that Donnelly told him that Gerlach was not indebted to him; the letter from Donnelly stating that Gerlach was not indebted for any "current legal services"; Donnelly's refusal to discuss the notes when they were discovered; Gerlach's reaction when exhibited the notes, as well as the circumstances of the conspiracy of Donnelly to murder Gerlach and the other testimony delineated above, completely overcame the presumption of delivery of these obligations.
If this were a suit upon the notes brought by Donnelly against Gerlach, the introduction of the notes in evidence would be sufficient to eliminate the necessity of proof of delivery. But in this case, brought against the estate of Donnelly to cancel these notes as fraudulent, the direct testimony that there was no delivery of the instruments and that they were procured by fraud overcomes the presumption before it arises.
There is some discussion in the brief about the dead man's statute, F.S.A. § 90.05, but this statute does not preclude the plaintiff Gerlach testifying as to the transaction. The reason that this is true is set forth in Security Trust Company v. Calafonas, Fla. 1953, 68 So.2d 562, 563, wherein we quoted with approval the following language from Blount v. Blount, 158 Ala. 242, 48 So. 581, 582, 21 L.R.A.,N.S., 755:
"`* * * A transaction between two parties necessarily implies action, consent, knowledge or acquiescence on the part of both. Hence, if a grantor never in truth and in fact executed or attempted to execute an alleged deed to a given grantee, he is not and cannot be a party to the transaction, which on its face purports to be the execution by him of a deed to the named grantee.
* * * * * *
"`We are not now writing as to the probative force of such proof of execution, filing, and recording of the deed, but as to the conclusiveness of such matters to show a transaction between the grantor and grantee. We hold that the grantor in such document, no matter what its nature, character, or recitals, is not precluded, by such proof, such filing, and such recording, from showing that his alleged signature thereto and his acknowledgment thereto are forgeries and frauds, perpetrated without his knowledge or consent. If this be not true, one man can acquire, for his estate after his death, all the property of another, without the knowledge or consent of such other, and yet do it by due process of law. We say the law is not, and ought not to be such as to allow such proceedings or results.'"
The trial court held in the quoted portion of its decree that the burden of showing lack of consideration was on the plaintiff. The negotiable instruments law (the applicable section being 674.27, F.S.A.) provides that every negotiable instrument is deemed prima facie to have been issued for a valuable consideration. This is a presumption, like delivery, which may be overcome by proof. It is a rebuttable presumption. Florida National Bank and Trust Co. of Miami v. Brown, Fla. 1950, 47 So.2d 748. The presumption of consideration as well as delivery is rebuttable under the statute as between the original parties to the transaction. This presumption having been here overcome by overwhelming evidence and there being no testimony which in our judgment has probative force sufficient to overcome the direct and positive testimony of the appellant here that there was no consideration and that there had been no delivery, the conclusion is inescapable that the decree of the lower court was the result of misconstruing the legal effect of the evidence and was therefore erroneous.
There is another reason why this decree must be reversed.
*498 There is no relationship between individuals which involves a greater degree of trust and confidence than that of attorney and client. The relationship has its very foundation in the trust and confidence the client reposes in an attorney selected to represent him. The attorney is under a duty at all times to represent his client and handle his client's affairs with the utmost degree of honesty, forthrightness, loyalty and fidelity. Business transactions between attorney and client are and always ought to be subject to the closest scrutiny because of this underlying relationship. It is an ancient and firmly established principle of the law that the burden is placed upon an attorney to establish by clear and convincing evidence the fairness of an agreement or transaction purporting to convey a property right from a client to his attorney. Moreover, the burden is cast upon the attorney in transactions of this kind to establish that such was made upon full and adequate consideration. Bolles v. O'Brien, 1912, 63 Fla. 342, 59 So. 133. See also Williams v. Bailey, 1915, 69 Fla. 225, 67 So. 877; Halstead v. Florence Citrus Growers' Ass'n, 1932, 104 Fla. 21, 139 So. 132; and Renno v. Sigmon, 1941, 148 Fla. 229, 4 So.2d 11.
The latest expression of this Court upon the subject is found in Brass v. Reed, Fla. 1953, 64 So.2d 646, 648, where among other things, we said:
"The only difference in dealings between attorney and client and other people is that relationship between attorney and client is very intimate, close, personal and confidential, and an attorney is required to exercise in all his dealings with his client a much higher standard than is required in business dealings."
With these principles in mind, there is no view which could be taken of the evidence in this cause upon which a conclusion could be lawfully reached that these obligations were valid and enforceable. It imposes no undue hardship upon an attorney to require him to justify the fairness and validity of transactions between him and his client, and this rule vests in the courts the power to closely scrutinize and supervise the actions of those who are its officers.
This cause is reversed with directions to enter a decree in accordance with the views herein expressed.
TERRELL, C.J., ROBERTS and THORNAL, JJ., and STURGIS, District Judge, concur.
THOMAS and HOBSON, JJ., dissent.