602 So.2d 1313 (1992)
Stephan C. SINK, Appellant,
v.
ABITIBI-PRICE SALES CORPORATION, Appellee.
No. 91-1880.
District Court of Appeal of Florida, Fourth District.
July 1, 1992.
Rehearing, Certification and Rehearing Denied September 3, 1992.
*1314 Jerrold A. Coff and David Wilkes of Jerrold A. Coff, P.A., Miami, for appellant.
J. Cameron Story and Amy J. Galloway of Gunster, Yoakley & Stewart, P.A., Fort Lauderdale, for appellee.
Rehearing, Certification and Rehearing En Banc Denied September 3, 1992.
POLEN, Judge.
Stephan C. Sink (Sink) appeals an adverse final judgment on his suit against Abitibi-Price Sales Corporation for breach of contract.[1] Sink held the position of president of Jaffe's Office Products, a division of appellee Abitibi-Price Sales Corporation (hereinafter Abitibi-Price). Abitibi-Price was negotiating with Sink for the purchase of the Jaffe division at the end of 1989 and the parties entered into a "Management Agreement" on October 6, 1989. The terms of the agreement included:

OCTOBER 6, 1989  MANAGEMENT AGREEMENT
 Incentive package for remaining with Abitibi-Price through December 21, 1991, including lump sum salary and continuation of benefits for twelve (12) or (15) months after termination; however, Abitibi-Price could terminate Sink's employment at any time
 Out placement services
 Letter of recommendation
 The agreement would be void in the event of discharge for cause
On March 22, 1990, Sink withdrew as a potential purchaser of the Jaffe Division, and on March 26, 1990, Sink signed a letter purporting to set out the arrangements to be made upon his termination of employment on March 30, 1990. The terms outlined in the letter included:

MARCH 26, 1990  TERMINATION LETTER
 Confirming March 30, 1990, as the date of termination
 Begins: "This letter sets out the arrangements to be made on the termination of your employment and reflects the terms of the Management Agreement signed with you on October 11, (sic) 1989."
 Provides for lump sum twelve (12) month salary of $208,129.42
 Mandates a lump sum amount in lieu of outplacement services
 Concludes: "I have read and understood the terms of this letter. I agree to them and release Abitibi-Price from any claims which I may have, under the Management Agreement or otherwise."
On March 30 when Sink left Jaffe's after being terminated, he had in his possession six (6) or seven (7) rebate checks totalling approximately $66,000.00 that had been given to Jaffe's as incentives from various office product manufacturers. Sink testified that he was keeping these checks because he felt that his severance benefit commitment had not been honored. While *1315 Sink testified that Abitibi-Price knew that Sink was holding the rebate checks in late 1989, both Bruce McGroarty, president of the office products division of Abitibi-Price, and Michael Nuccio, comptroller for Jaffe under Sink, testified that they were unaware that Sink was holding the rebate checks until after Sink had been given his severance check. Nuccio had asked Sink whether he had the checks one or two days prior to March 30, and Sink responded that he had given them to an individual in Abitibi-Price's central office.
It was on March 30, 1990, that Nuccio gave Sink his severance check in the amount of $208,129.42. After giving Sink the check, it occurred to Nuccio that Sink was an authorized signer on accounts that had been opened in anticipation of Sink's purchasing Jaffe, and Nuccio thought that Sink might possibly try to cash the rebate checks, if Sink had them. Sink had left Abitibi-Price by that time, and when Nuccio spoke with Sink on the afternoon of March 30, Sink admitted possession of the checks, and returned them to Nuccio that evening.
Although Sink had testified that Nuccio told him not to cash the severance check he had been given on the morning of March 30, because there were not sufficient funds in the account on which it was drawn, Nuccio did not recall making that statement, and Barnett Bank statements were admitted into evidence showing that funds sufficient to satisfy the check were in the bank account. On April 4, 1990, Nuccio made the decision to put a stop payment on Sink's severance check because he did not believe Sink was entitled to severance pay in light of the rebate check scandal. Sink returned the severance check to Nuccio when it was requested of him.
Sink filed the underlying suit against Abitibi-Price, alleging the March 26 Letter of Termination was a novation of the previous Management Agreement, which Abitibi-Price breached by stopping payment on the severance check. Abitibi-Price cross claimed for damages alleging breach of the Management Agreement and breach of fiduciary duty. Following a one day bench trial, the trial court entered a two paragraph final judgment finding for Abitibi-Price on Sink's breach of contract claim and for Sink on Abitibi-Price's counterclaim. This appeal followed.
At issue is the trial court's interpretation of the two (2) documents: (1) a "Management Agreement" executed by the parties on October 6, 1989; and (2) a "Termination Letter" executed by the parties on March 26, 1990. Abitibi-Price properly notes that Sink's four points on appeal all relate to an initial determination whether the March 26, 1990, letter was a novation of the October 6, 1989, Management Agreement, and whether the trial court erred in finding otherwise. If no novation was created by the March 26 letter, then under the October 6 Management Agreement Abitibi-Price could terminate Sink's employment at any time, and the incentive package would be void if Sink were terminated for cause. In other words, if no novation was created, then Sink was not entitled to $208,129.42 in incentives, and his breach of contract claim would fail.
Appellant argues that the purpose of the March 26, 1990, "Termination of Employment" letter was to reflect that the parties had already determined that Sink would leave appellee's employ, and provided a new basis for his lump sum compensation of the October 6, 1989, "Management Agreement." Most importantly, the "discharge for cause" provision of the Management Agreement was no longer needed, because both parties agreed Sink was terminating all involvement with Abitibi-Price as of March 30, 1990 (four days after the March 26, 1990, letter). Hence, appellant contends that as a matter of law (and without the need to consider parol evidence) the March 26, 1990, letter constituted a novation, and entitled him to the $208,129.42 severance pay. We agree with appellant and reverse.[2]
*1316 The four elements necessary to demonstrate a novation are:
(1) the existence of a previously valid contract; (2) the agreement to make a new contract; (3) the intent to extinguish the original contractual obligation; and (4) the validity of the new contract. Sans Souci v. Division of Florida Land Sales & Condominiums, 421 So.2d 623, 630 (Fla. 1st DCA 1983), rev'd on other grounds, 448 So.2d 1116 (Fla. 1st DCA 1984); 11 Fla.Jur.2d Contracts § 183.
S.N.W. Corp. v. Hauser, 461 So.2d 188, 189 (Fla. 4th DCA 1984).
Applying these elements to the facts adduced at trial reveals that a novation occurred. Both parties agree that the management agreement was a valid contract. The parties' agreement to make a new contract is evidenced by Abitibi-Price's proposal that their attorneys draft the termination contract. Further, the new contract eliminated the letters of recommendation Sink was to receive, lacked any good cause termination language, and added a clause releasing Abitibi-Price from any claim Sink had or might have against Abitibi-Price. These distinct contract clauses, as well as the very existence of the termination contract, establish the parties' intent that the termination agreement replace the management agreement. Under these circumstances, the trial court should have determined, as a matter of law, that a novation took place, the parties having "enter[ed] into an entirely new and unambiguous agreement of equal or greater dignity to the agreement first made with respect to the same subject." Evans v. Borkowski, 139 So.2d 472, 474 (Fla. 1st DCA), cert. denied, 146 So.2d 378 (Fla. 1962).
Our disposition as to appellant's first point renders moot any consideration of the third and fourth points. For example, it makes no difference whether the trial court heard testimony as to whether there was cause for appellant's discharge. Our determination that the March 26 agreement was a novation precludes any application of the "discharge for cause" clause of the October 6 agreement.
As to the remaining point, we note that the final judgment makes no findings of fact, but simply holds in favor of appellee on appellant's claim. The record does not support any claim by Abitibi-Price of fraud in the inducement or other defense to Sink's breach of contract claim.
Accordingly, we reverse the final judgment in favor of Abitibi-Price, and remand to the trial court to enter a judgment for Mr. Sink.
GLICKSTEIN, C.J., and ANSTEAD, J., concur.
NOTES
[1] The trial court, following a bench trial, also ruled in favor of Sink on Abitibi-Price's counterclaim. Neither side has challenged that ruling.
[2] We cannot ascertain what effect, if any, this ruling would have had on Abitibi-Price's counterclaim. However, as noted above, there is no cross appeal as to the judgment for Sink on the counterclaim.