**In re RIVER OAKS INVESTMENT CORP., Debtor.**

**Bankruptcy No. 93–20569–BKC–SMW.**

United States Bankruptcy Court, S.D. Florida.

March 29, 1993.

Jeffery L. Caress, Fort Lauderdale, FL for debtor.

Mark E. Stein, Miami, FL for creditor.

### ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL

SIDNEY M. WEAVER, Chief Judge.

THIS CAUSE came on to be heard by the Court on March 3 and 10, 1993, upon the Emergency Motion of RIVER OAKS INVESTMENT CORP. ("RIVER OAKS" or the "Debtor"), to use Cash Collateral. The Court having heard the testimony, having considered the evidence adduced, having heard the argument of counsel, and being fully advised in the premises, renders its finding of facts and conclusions of law as hereinafter stated.

## I. *FINDINGS OF FACTS*

RIVER OAKS commenced this case by filing a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code on February 17, 1993 (the "Petition Date"). RIVER OAKS continues to manage its property and operate its business as a Debtor–in–Possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

The Debtor's business is the management and operation of an apartment complex located at 2929 North Dixie Highway, Oakland Park, Florida 33334 (the "Property"). The Property consists of a 219 unit apartment complex which, on the Petition Date, was approximately 90% rented and generated rental income of approximately $90,000.00 on a monthly basis (the "Rents"). RIVER OAKS is the owner of the Property by reason of a Clerk's Deed conveyed to RIVER OAKS when it foreclosed on its third mortgage which encumbered the Property.

The Property is encumbered by a first mortgage (the "First Mortgage") which secures a loan made by Amerifirst Savings and Loan Association ("Amerifirst") on or about December 4, 1986, in the original principal amount of $5,040,000.00 ("Amerifirst Note") The Amerifirst Note is additionally secured by a Collateral Assignment of Leases, Rents and Profits, dated December 4, 1986 (the "Assignment of Rents"). The First Mortgage, Amerifirst Note, and the Assignment of Rents are collectively referred to hereinafter as the "1986 Loan Documents".

The Property is further encumbered by a second mortgage ("the Second Mortgage"). The Second Mortgage secures two notes executed in favor of Conanti Investments in the principal amounts of $580,000.00 and $245,000.00. Conanti also claims an interest in the Rents pursuant to a collateral assignment of rents incorporated into the Second Mortgage.

On November 13, 1987, Debtor's predecessor-in-interest executed a Promissory Note and Mortgage Modification and Assumption Agreement in favor of Amerifirst. The Assumption Agreement provided for *inter alia* additional guarantors to secure the repayment of the 1986 Loan Documents; for a new interest rate to apply to the 1986 Loan Documents; for a new borrower to be obligated for the repayment of the 1986 Loan Documents; and for a disbursement of funds which were held back pursuant to the terms of the 1986 Loan Documents and which were applied toward a principal reduction of the 1986 Loan Documents; all as part of an assumption, ratification and reaffirmation of all of the terms and conditions of the 1986 Loan Documents.

Amerifirst subsequently went into receivership, and the Resolution Trust Company (the "RTC"), acting in its capacity as Receiver, made a pre-bankruptcy implementation of Florida Statute Section 697.07 ("Section 697.07") on or about September 9, 1991.

On November 22, 1991, the RTC filed a foreclosure action styled *RTC v. Warren Stein, as Trustee, et al.*, in the Circuit Court in and for Broward County, Florida, Case No. 91–033278(14) (the "Foreclosure Suit"). Pursuant to that certain Order Requiring Deposit of Rents (the "Sequestration Order"), entered by the Honorable Paul M. Marko, III, in the Foreclosure Suit on April 6, 1992, RIVER OAKS was required to deposit all rents, revenues, and other payments derived from its ownership of the Property into a trust account maintained at Northern Trust Bank (the "Trust Account"). Judge Marko entered the Sequestration Order based on the RTC's assertion in its motion that the RTC had a perfected lien upon the rents and profits by reason of the 1986 Loan Documents and the RTC's written demand for payment of the rents pursuant to Section 697.07.

The Sequestration Order and the Stipulation applying thereto, (the "Stipulation") directed the RTC and RIVER OAKS to jointly agree upon and pay the operating expenses and other lawful obligations relating to the Property. Further, each check drawn upon the Trust Account required two signatures: one signature of the designated representative of the RTC's counsel and one signature of the designated representative of RIVER OAKS.

On June 22, 1992, the RTC conveyed to Lennar Florida Partners L.P.,I ("Lennar") the 1986 Loan documents, Guaranty Agreements applying thereto, and the Assumption Agreement, pursuant to an Assignment of Mortgage.

### CONCLUSIONS OF LAW

The bases for Lennar's opposition to RIVER OAKS' Motion to Use Cash Collateral are that:

1. The Assumption Agreement, executed in November, 1987, created a novation which brought the 1986 loan documents within the purview of Section 697.07; and

2. The RTC's pre-bankruptcy implementation of Section 697.07 created an absolute transfer of the Rents to Lennar.

The Court disagrees.

■ This Court continues to adhere to the opinion that Section 697.07 is intended to create an absolute transfer of the income stream to the mortgagee, upon default and written demand to the mortgagor. *In re 163rd Street Mini Storage, Inc.,* 113 B.R. 87, 90 (Bankr.S.D.Fla.1990).

Inasmuch as Section 697.07 effects a substantive change from the common law with respect to the property rights of an assignor and assignee to assigned rents, the statute cannot be applied retroactively pursuant to Florida constitutional law. *In re AmeriSwiss Associates,* 148 B.R. 349 (Bankr.S.D.Fla.1992); *In re Thymewood Apartments, Ltd.,* 129 B.R. 505, 512 (Bankr.S.D.Ohio 1991); *In re Camelot Associates Ltd. Partnership,* 102 B.R. 161, 165–166 (Bankr.D.Minn.1989).

■ The precise question presented is whether the Assumption Agreement constituted a novation which extinguished the 1986 Loan Documents and reincorporated the terms and conditions therein into a document originating in November, 1987 and within the effective date of the Section 697.07.

■ The party asserting the existence of a novation has the burden of establishing it by a clear preponderance of the evidence.

*Travis v. Central Surety & Insurance Corp.,* 117 F.2d 595, 596 (5th Cir.1941).

■ The four elements necessary to demonstrate a novation are:

1) the existence of a previously valid contract;

2) the agreement to make a new contract;

3) the intent to extinguish the original contractual obligations; and

4) the validity of the new contract.

*Sink v. Abitibi–Price Sales Corp.,* 602 So.2d 1313, 1316 (Fla. 4th D.C.A.1992); *S.N.W. Corp. v. Hauser,* 461 So.2d 188, 189 (Fla. 4th D.C.A.1984).

A review of the Assumption Agreement indicates that the parties intended the 1986 Loan Documents to remain distinct and the terms and conditions therein to remain in full force and effect except as specifically amended in the later document.

The explicit, unambiguous language in the Preamble to the Assumption Agreement, to which both parties assented, states in pertinent part:

> "The Borrower desires to *assume* the [1986 Mortgage] and the Amerifirst Note] secured thereby along with the [Assignment of Rents] and the parties hereto desire to modify certain terms and conditions of the [1986 Loan Documents] ..."

A fundamental tenet of mortgage law provides that:

> "a person who assumes payment of a mortgage is chargeable with notice of all its terms and provisions and is bound thereby; and he takes the encumbrance subject to all its conditions and limitations excepting such as are inconsistent with the terms of the deed to the grantee ..." 59 C.J.S. *Mortgages,* Section 413.

The explicit terms incorporated in the Preamble indicating the parties' intent for there to be an *assumption* of the 1986 Loan Documents mandate that this Court interpret the Assumption Agreement as a collateral document which merely supplemented and modified certain terms and conditions of the 1986 Loan Documents.

In the same vein, paragraph 15 of the Assumption Agreement provides in pertinent part:

> The Borrower hereby ratifies and reaffirms all of the terms and conditions of the [1986 Loan Documents], including those commitment letters dated October 28, 1986 and October 23, 1987, and as specifically modified herein ...

"Ratify" means "to authorize or otherwise approve, *retroactively,* an agreement or conduct either expressly or by implication". Black's Law Dictionary 1262 (6th ed.1990) (emphasis added). Similarly, the import of the word "reaffirm" is to recognize the continued validity of a pre-existing obligation. (Black's defines "reaffirmation" in the Bankruptcy context and states that the term "refers to a post-petition agreement to pay pre-petition obligations"). The Borrower's explicit ratification and reaffirmation in accordance with the plain meaning of the terms further manifested the parties' intentions for the 1986 Loan Documents to remain the operative documents with only certain modifications thereto to be implemented by the Assumption Agreement. The explicit language of the Assumption Agreement contemplates the continued effect of preexisting conditions and obligations arising under the 1986 Loan Documents.

In addition to employing terms which recognized the continued operation and effect of the 1986 Loan Documents, the parties' course of conduct further evidences an intention to continue the operation and effect of the 1986 Loan Documents. Although Lennar obtained the Sequestration Order in the Foreclosure Suit, Lennar never asserted an absolute ownership in the Rents prior to its response in opposition to Debtor's Emergency Motion to Use Cash Collateral. During the nine months preceding the Petition Date in which RIVER OAKS operated its business under the Sequestration Order, Lennar and RIVER OAKS had a joint interest in the Rents. Lennar and RIVER OAKS stipulated to agree as to what expenditures might necessitate use of the Rents. Further, Lennar and RIVER OAKS established a Trust Account from which disbursements could be made only if consented to by a representative of Lennar's counsel and a representative of RIVER OAKS.

Accordingly, the Court concludes that the operative loan documents from which Lennar derives an interest in the Rents originated in 1986 and therefore do not come within the purview of Florida Statute 697.07 (1991) which has an effective date of October 1, 1987. The execution of the Assumption Agreement on November 13, 1987 did not constitute a novation, but merely evidenced the parties' intention to supplement and amend the 1986 Loan Documents.

 Having concluded that the RTC's notice pursuant to Section 697.07 was ineffectual in creating an absolute transfer of the Debtor's interest in the Rents since the Statute post-dates the operative contracts of assignment, Lennar's rights in the Rents are governed by applicable common law. *In re 163rd Street, supra.* at 88–89; *White v. Anthony Inv. Co.,* 119 Fla. 108, 160 So. 881, 882 (1935). Lennar has obtained an Order of Sequestration and therefore has a perfected security interest in the Rents.

It is therefore,

ORDERED AND ADJUDGED as follows:

1. That the Rents constitute cash collateral as that term is defined in Section 363(a) of the Bankruptcy Code;

2. That Debtor shall be and hereby is authorized to use the cash collateral for the ordinary and necessary expenses incurred in the operation of its business and to meet all lawful obligations in connection with the Property;

3. That Debtor shall provide Lennar with a budget listing its expenses; and

4. That Debtor shall be required to place all net proceeds from the Rents into a separate escrow account pending further order of this Court.

DONE AND ORDERED.