POLEN, J.
Robert Elmore, Cynthia Griffith, Nancy E. Demmery, James R. Hayes, and Pamela E. Hayes (collectively “Elmore”) timely appeal after the trial court granted partial final summary judgment on Counts I and II of their sixth amended complaint in favor of Broward County and Florida Power & Light (“FP&L”). The order effectively dismissed Elmore’s case against Broward County and FP&L with prejudice.- Elmore argues that the court erred in. determining from the face of the complaint that Counts I and II were barred by the statute of limitations; that his excavation rights had expired; and that FP&L was released of [sic] any potential liability by virtue of its assignment of • rights to *970 Alandco, Inc. We agree on all points raised and reverse.
Elmore alleged that on December 2, 1955, he, as trustee, acquired certain lands in Broward County pursuant to a warranty deed. The lands were to be used for the benefit of FP&L and Elmore. FP&L intended to use the lands to establish a cooling lake in order to service its power plant, and Elmore intended to use the lands to quarry rock and fill.
To further these intentions, Elmore and FP&L that same day entered into a contract. The contract provided that Elmore held title to the lands in trust for himself and FP&L. FP&L reserved the right to compel Elmore to transfer title to the subject lake to it at any time. Elmore reserved for himself all title to the rock within the lake. Also pursuant to the contract, the parties agreed that, in the dredging of the lake, 50 foot strips were to be left intact so that Elmore could quarry rocks throughout the lake area. The contract provided that either party could sell all or a portion of the remaining lands, but that each had a right of first refusal to purchase same. On February 10, 1963, Elmore executed a Declaration of Trust memorializing the 1955 contract.
On May 21, 1984, Elmore conveyed the property surrounding the lake’s rim to FP&L by special warranty deed. By its terms, the conveyance did not affect the 1963 Declaration of Trust or the 1955 contract as to the remaining lands.
Also on that date, FP&L and Elmore entered into an excavation retention agreement. The agreement provided that Elmore would hold title to the rock, stabilizer, and sand lying within the lake presently on the property, and would continue to have the right to remove same under the terms of the 1955 contract. Simultaneously, FP&L assigned all of its interest under the above Declaration of Trust to Alandco, Inc. (another defendant in El-more’s suit). Elmore consented to the assignment and released FP&L from all obligations and liability under the 1955 contract.
On May 13, 1986, Elmore and Alandco entered into a termination agreement to end the 1955 contract and Declaration of Trust. That same day, he and Alandco entered into an agreement for purchase and sale. By this agreement, both parties’ interest in the lands, with the exception of the cooling lake that was previously conveyed to FP&L, were divided. The agreement also recognized that Elmore retained his rights to quarry and excavate rock from FP&L’s lake in accordance with the excavation retention agreement.
On August 2, 1989, Alandco, with FP&L’s knowledge and consent, executed the Plat of the Port 95 Commerce Park. This plat effectively dedicated Southwest 30th Avenue for use of a public road and landscape buffers. The boundary of the lands surrounding the subject lake, however, intersected the center line of Southwest 30th Avenue.
On July 25, 1996, Elmore sued Alandco, claiming that the plat interfered with his excavation, stockpiling and staging rights under the 1984 excavation retention agreement. In 1998, after having amended his complaint several times, Elmore added Broward County and FP&L as defendants; only two counts pertained to them. In Count I, Elmore alleged that, on August 2, 1989, FP&L breached the terms of the 1984 excavation retention agreement by consenting to and authorizing the use of a portion of the lands for right-of-way purposes and buffers. He alleged that he did not suffer any damages until March, 1998, when he attempted to exercise his excavation rights with respect to the lake property. He sought to have the court require FP&L to specifically perform the terms of the agreement, and to enjoin Broward County from any interference or obstruction with such terms. In Count II, he sought damages against Alandco and FP&L by virtue of their breach of the agreement “to the extent of the diminution *971 of his property rights and loss of income .... ”
Thereafter, FP&L and Broward County moved to dismiss these counts. The court dismissed them, but did not specify whether the dismissal was with prejudice. Consequently, Elmore and FP&L each filed motions for entry of partial final summary judgment as to these counts. The court then entered final partial summary judgment. as to these counts. Following the denial of his motion for rehearing, Elmore appealed.
I.
Elmore first argues that, on its face, his complaint did not show that the statute of limitations on his cause of action against FP&L and Broward County ■ expired. When confronted with a motion to dismiss, the court must take the allegations of the complaint as true and decide only questions of law, Connolly v. Sebeco, Inc., 89 So.2d 482, 484 (Fla.1956). The defense of statute of limitations may be raised by a motion to dismiss where its violation appears on the face of the complaint or exhibits. Fla. R. Civ. P. 1.110(d), 1.140(b); Toledo Park Homes v. Grant, 447 So.2d 343, 344 (Fla. 4th DCA 1984) (citation omitted).
It is undisputed that the statutes of limitations on Elmore’s suit against FP&L and Broward County with respect to the 1984 excavation retention agreement are governed by sections 95.11(2)(b) and (5)(a), Florida Statutes (1997). Under section 95.11(2)(b), an action for damages for breach of a written contract must be brought within five years. § 95.11(2)(b), Fla. Stat. (1997). Under section 95.11(5)(a), a claim of specific performance of a contract must be brought within one year. § 95.11(5)(a), Fla. Stat. (1997). In both of these statutes, the limitations period begins to run when the last element constituting the cause of action occurs. § 95.031(1), Fla. Stat. (1997).
In this case, its is undisputed that the breach occurred, if at all, in 1989. However, Elmore alleged that he did not suffer any damages flowing from the breach until March, 1998. As damages are the last element for a cause of action for breach of contract, we hold that this allegation should have survived a motion to dismiss based on this ground. See Knowles v. C.I.T. Corp., 346 So.2d 1042 (Fla. 1st DCA 1977)(holding party must plead the existence of a contract, a breach, and damages flowing from the breach to state a cause of action for breach of contract).
II.
We also hold that it is unclear from the face of the complaint as to whether Elmore’s excavation rights had expired. Specifically, Elmore alleged that the 1989 plat injured Elmore’s rights to the title of the rock, stabilizer, and sand in the lake. Even though the plat encroached only the lands adjacent to the lake, and not the actual lake itself, “lake” is not a defined term in the excavation retention agreement; thus, whether it includes the lands adjacent to it appears ambiguous. Construing this ambiguity against FP&L, we believe that the term “lake” could have referred to “the lake and all lands adjacent to the lake that were conveyed to FP&L” on May 21, 1984. See New York Life Ins. Co. v. Kincaid, 136 Fla. 120, 186 So. 675, 678 (1939)(“[I]t is a rule common to the construction of all written instruments that it is to be taken, in cases of doubtful meaning, against the draftsman.”) (citation omitted). As such, we hold that it was premature to have dismissed the complaint on this ground.
III.
Finally, we hold that it is unclear from the face of the complaint whether in 1984, when Elmore consented to FP&L’s assignment of its interest in the original Declaration of Trust to Alandco, a novation of the 1955 contract occurred. The elements of novation are the existence of a previously valid contract; an agreement to make a new contract; the intent to extin *972 guish the original contract and obligation; and the validity of the new contract. Sink v. Abitibi-Price Sales Corp., 602 So.2d 1313, 1316 (Fla. 4th DCA) (citation omitted), rev. denied, 613 So.2d 1 (Fla.1992). It is unclear from our review of the complaint that FP&L intended to extinguish FP&L’s duty to allow Elmore to quarry rocks within the lake when the assignment took place. As such, we believe the allegations should have survived the motion to dismiss.
REVERSED and REMANDED for further proceedings.
FARMER and HAZOURI, JJ., concur.