SALTER, J.
Former City of Miami City Attorney Jorge L. Fernandez appeals a final judgment and orders on attorney’s fees and costs entered against him after a non-jury trial. Mr. Fernandez, plaintiff below, sought $274,721 in severance, vacation, and sick leave payments from the City in a breach of contract action. Mr. Fernandez’s lawsuit followed his plea of nolo con-tendere and adjudication of guilt on two charges of knowingly making false claims for reimbursement to the City’s Finance Department while serving as City Attorney, and the termination of his employment following the adjudication of guilt.
The City denied liability to Mr. Fernandez, raised numerous affirmative defenses against his claim, and counterclaimed for breach of fiduciary duty, fraud, breach of oath of office, civil theft, and conversion. Following three days of trial, which featured numerous documentary exhibits and the testimony of nine witnesses, the trial court entered a detailed final judgment denying Mr. Fernandez’s claim and awarding damages to the City on its counterclaims. Judgments against Mr. Fernandez for attorney’s fees and costs followed. For the reasons described below, we affirm each of the judgments and orders.
I. The Facts Established at Trial
A. Appointment and Initial Salary/Benefit Summary
The City Commission appointed Mr. Fernandez to serve as City Attorney in July 2004. A complete written employment agreement was not prepared and signed; instead, the City Commission approved the appointment in a resolution with a single page summary listing a salary, leave time allowance, insurance benefits, expense allowance amounts, deferred compensation, retirement, severance, and relocation and household goods moving expenses. The provision regarding severance stated:
At time of separation, the City Commission may consider the payment of six months compensation as severance, at its discretion.
The 2004 summary also provided for expense reimbursement of Mr. Fernandez’s “reasonable expenses not to exceed $5,000 per year.” The single page summary did not include such terms as a description of duties, prohibition of other work and income, status following death or disability, effect of conviction for crimes or incarceration, breach, or dispute resolution, for example. The single page summary was approved in September 2004. In December 2005, the Commission reappointed Mr. Fernandez.
City policy and practice with respect to expense reimbursement for its key officers required an election between two alternatives: the officer could have the monthly amount included in the regular salary checks (in which event it would be subject *555 to federal income taxes), or the officer could provide itemized reimbursement requests for only those expenses allowed by City policies and incurred in connection with the officer’s official business for the City. Under the latter alternative, which Mr. Fernandez elected for the years at issue here, purely personal expenses and certain categories of expenses (alcoholic beverages, for example) were not reimbursable.
B. Expenses Incurred Before the July 2006 Renewal
Mr. Fernandez’s assistant testified that Mr. Fernandez would keep receipts at home and bring them to the office after several months, and his assistant would then organize them chronologically. Mr. Fernandez instructed the assistant to pick out the larger ones and then others to add up to the maximum pro rata amount allowed for the months. The objective was to consume the allowed amount without itemizing the receipts or indicating the relationship to the City’s business.
Mr. Fernandez submitted the bundled receipts with a personal memorandum, which he initialed, stating:
Attached please find expenses incurred by me, which I have determined are necessary in the performance of my duties. I have attached receipts for a client meeting/dinner at which I hosted prospected [sic] applicants, expert witnesses, colleagues, clients and/or individuals with whom I have had the need to confer regarding issues which I am involved as the City Attorney. The total amount due me is $_
In May of 2005, the second sentence of Mr. Fernandez’s cover memo for reimbursements was amended to: “I have attached receipts for meetings, dinners at which I hosted prospective applicants, expert witnesses, colleagues, clients or other individuals with whom I have had the need to confer regarding issues with which I am involved as the City Attorney.” The balance of the memo was not changed. When asked to provide more detail for meeting expenses, such as the identity of the attendees and the subject, Mr. Fernandez said that the meetings were privileged and confidential and that he could not provide those details.
By August 2006, the City finance director asked for an additional term in the reimbursement cover memo: “All expenses incurred and submitted herein for reimbursement were made in accordance with City policy.” The finance director testified that she relied on Mr. Fernandez to be truthful in his reimbursement requests to the City.
C. The July 2006 Modifications and Resolution
In mid-2006, Mr. Fernandez sought an increase in compensation and benefits. He prepared a memorandum evaluating his own performance, but to be sent by a City Commissioner to the other members of the Commission and the Mayor. The memorandum listed a number of perceived accomplishments and included a one-page “side by side” comparison of Mr. Fernandez’s “present” and “proposed” salary and benefits. The single page comparison sheet included 20 categories relating to salary, leave time, insurance, and other benefits. Near the bottom of the list, the provision for severance was to be amended to state, “At time of separation, payment of six months compensation as severance.” As noted previously, that term had been conditional since 2004 — “the City Commission may consider” the payment of a six-month severance.
In July 2006, the City Commission considered and adopted a resolution approving the new terms by a vote of three to two. The resolution did not include the *556 “side by side” comparison, but was instead based on a single-page summary that listed only the proposed new terms. The minutes of the Commission’s discussion and vote on Mr. Fernandez’s new terms, thirteen pages, include a single comment by one Commissioner about the proposed change in the severance term: “I think it’s [the proposed salary increase] around 15 percent, excluding the value of the increased vacation and the guaranteed severance change ....”
Unsurprisingly, there was no discussion regarding whether the severance would or would not be payable in the event Mr. Fernandez was convicted of a crime or theft involving City funds. There was no independent legal review, on behalf of the City, of the proposed changes. There was no suggestion by Mr. Fernandez that such a review would be appropriate. There was no disclosure during the Commission meeting that the memorandum from a Commissioner describing Mr. Fernandez’s job performance had actually been authored by Mr. Fernandez. And importantly, the record includes evidence that only one person at that Commission meeting— Mr. Fernandez — was aware that he had been charging prohibited personal and family expenses for presentation to the City as allowed and reimbursable expenses.
D. The August and September 2006 Reimbursement Requests
Two false reimbursement requests later became the subject of Mr. Fernandez’s criminal charges, plea agreement, and conviction.[1] An August 2006 memorandum sought (and resulted in) reimbursement for a $530.00 dinner at a Manhattan steak house for Mr. Fernandez, his wife, his son, and his son’s girlfriend, on a Saturday night for a family celebration that did not involve any City business. The following month, Mr. Fernandez submitted a memorandum which sought (and resulted in) reimbursement for a 45-person Sunday brunch at a Miami restaurant for another family celebration that did not involve any City business.
The further evidence at trial presented by the City to prove expense account fraud showed that Mr. Fernandez had taken 27 out-of-state trips between September 2004 and September 2007, including conferences in Honolulu, Las Vegas, Washington, D.C. (eight trips), Chicago (five trips), and New Orleans. These trips by Mr. Fernandez resulted in travel and lodging expenses exceeding over $34,400, above and beyond the $10,000 per year expense allowance, and also took him away from the office for some 65 days (which were not charged to vacation or personal leave days).
E. Investigation, Negotiation, Termination
In 2007, the State Attorney’s Office and Internal Affairs Section of the City of Miami Police Department investigated anonymous complaints that Mr. Fernandez was submitting to the City finance department fraudulent claims for reimbursement of purely personal expenses. When the complaints were corroborated, the State, Mr. Fernandez, and his attorney entered into plea negotiations.
On February 14, 2008, the State charged Mr. Fernandez with two counts of making false official statements in expense reports.[2] The same day, Mr. Fernandez *557 signed a plea agreement. Mr. Fernandez agreed that he would be adjudicated guilty on the charges and that he would resign his position as City Attorney. He promptly submitted a letter of resignation, to become effective February 19, 2008. However, on February 28, 2008, the City Commission unanimously rejected the resignation and terminated Mr. Fernandez as City Attorney based on criminal conduct and violation of public trust. When Mr. Fernandez’s request for a payment of severance and allegedly-unused leave days was denied, he commenced the circuit court lawsuit that culminated in this appeal.
II. Analysis
Mr. Fernandez argues here, as he did below, that the one-page summary approved by the City Commission in 2006 is a binding, unambiguous agreement with severance and leave accrual provisions that are operative despite his conceded perpetration of financial crimes against the City while employed to oversee the legal affairs of the City. The City, in its affirmative defenses and counterclaims, has continuously asserted that:
• Mr. Fernandez committed a prior, superseding, material breach of his oath of office and the at-will employment arrangement, excusing any alleged duty of the City to make severance and leave payments;
• The one-page summary sheets were incomplete and did not address criminal acts against the City itself, so that the omission should be construed against the draftsman (Mr. Fernandez);
• Mr. Fernandez breached his fiduciary duty as an attorney to his non-lawyer clients (the Commissioners) by failing to describe the consequences of the revised severance provision and failing to discuss or recommend a review of the terms by independent counsel on behalf of the City; and
• Mr. Fernandez’s fraudulent inducement to the City to approve more favorable terms for his own benefit vitiates any right he might have to enforce those terms.
There is no question that a Florida attorney must use particular care in representing himself or herself and the client in a transaction between them providing enhanced benefits to the attorney. Moreno v. Allen, 692 So.2d 957, 959 (Fla. 3d DCA 1997) (attorneys’ inherent conflicts of interest in persuading client to approve enhanced fees held void for lack of consideration and overreaching); Gerlach v. Donnelly, 98 So.2d 493, 498 (Fla.1957) (“The attorney is under a duty at all times to represent his client and handle his affairs with the utmost degree of honesty, forthrightness, loyalty and fidelity. Business transactions between attorney and client are and always ought to be subject to the closest scrutiny because of this underlying relationship”); Brigham, v. Brigham, 11 So.3d 374, 386 (Fla. 3d DCA 2009) (“Transactions between an attorney and client, where the attorney profits at the client’s expense, will, if not void, be closely scrutinized to determine utmost good faith.”).
In the present case, the Commissioners were not lawyers and were not represented or advised by an independent attorney. The loose, single-page summaries lacked contract language to address the varieties of contract termination scenarios (at the instance of the employer, at the *558 instance of the employee, for cause, or not for cause, for example). The notion that Mr. Fernandez could have resigned one day after the passage of the 2006 resolution and demanded a full six-month severance, or that he could have been imprisoned for the misapplication of City funds, and still demand a full six-month .severance, betrays the lack of meaningful advice provided his client.
These facts distinguish the present case from those relied upon by Mr. Fernandez. In Barakat v. Broward, County Housing Authority, 771 So.2d 1193 (Fla. 4th DCA 2000), the employee seeking the payment of a severance benefit was not an attorney. Any legal review of the employment terms and resolution for the County was performed by someone other than the employee claiming the benefit. The severance provision was unconditional from the outset of his employment (in the present case, severance was discretionary until Mr. Fernandez modified the term without an independent legal review or his own affirmative discussion of the change during the course of the Commission meeting). The basis for the employee’s termination in Barakat was his false federal income tax return — which caused him to be suspended from participation in federal housing programs — not his conviction of crimes against his governmental employer. And finally, the reviewing court determined that unconscionability had not been pled by the employer, and the facts before the court had not shown that the contract was against public policy. Id. at 1194.
Similarly, the case of Sink v. Abitibi-Price Sales Corp., 602 So.2d 1313 (Fla. 4th DCA 1992), involves a non-attorney employee who had negotiated a severance provision at arms’ length with his corporate employer. The negotiation occurred in connection with the sale by Abitibi-Price of the division headed by Mr. Sink. The legal issue was whether a 1990 termination letter represented a novation displacing the terms of a 1989 management agreement. The opinion does not address a chief legal officer’s self-serving recommendation (to his otherwise-unrepresented employer) that his or her contract be changed to assure payment of benefits following the commission of a crime against the employer by the chief legal officer.
Nor does Nabors v. Miami-Dade County, 796 So.2d 634 (Fla. 3d DCA 2001), control the case before us. In Nabors, a non-attorney employee of the county aviation department pled guilty to accepting unlawful compensation. The employee submitted a resignation and then claimed a right to payment for accrued annual and sick leave. The accrued, unpaid sick leave claim was denied because of a preexisting county employment manual provision precluding such a payment unless the employee resigned “in good standing.” A summary judgment on the denial of annual leave benefits, however, was reversed. The employment manual contained no “good standing” requirement as to annual leave. A county ordinance provided that an employee “found by a court of competent jurisdiction to have committed while in county service an offense involving a breach of the public trust shall forfeit all rights to payment for accumulated sick and annual leave,” but the ordinance was enacted after the end of the period during which the employee’s annual leave had accrued. Id. at 635, n. 2. The ordinance contained no provision for retroactivity, and this Court declined to impose the forfeiture retroactively. In that case, the employee did not persuade the county commission to grant him an increased accrued leave benefit while serving as the commission’s chief legal officer.
Finally, Mr. Fernandez argues that sec *559 tion 112.313(5), Florida Statutes (2006),[3] relieved him of any fiduciary duty regarding the negotiation of his own salary and severance provisions. The right to negotiate compensation in that provision, however, is not a license to ghostwrite a memorandum for a Commissioner suggesting material changes that redound exclusively to the benefit of the municipal attorney without proposing or suggesting any independent legal review. The trial court found, after hearing and considering all of the evidence at trial that Mr. Fernandez “breached his fiduciary duty to the City when he failed to explain to the City Commission the view which he expressed at trial that he would be entitled to the severance pay even if he were to be discharged for committing a crime against the City,” and that he submitted false and fraudulent expense reimbursement requests while “failing to explain properly to his client, the City Commission, the consequences of the changes he made to the severance provision of his contract.”
The trial court entered its judgment and orders in favor of the City on alternative grounds: ambiguity in the bare-bones resolution (construed against Mr. Fernandez as the draftsman); prior superseding breach; fraud; and breach of fiduciary duty. On the record before us, we conclude that there was ample competent, substantial evidence before the trial court to support the trial court’s findings on breach of fiduciary duty and fraud, and we do not address the alternative and independent grounds of ambiguity and prior superseding breach. The trial court’s conclusions on breach of fiduciary duty and fraud must be affirmed. Mitchell v. Higgs, 61 So.3d 1152, 1154 (Fla. 3d DCA 2011); CFI Sales & Mktg., Ltd. v. Fla. Marlins Baseball, Ltd., 837 So.2d 423 (Fla. 3d DCA 2002).
III. Conclusion
The trial court heard and considered extensive evidence proving breaches of two separate duties, each of which is imbued with far more than a garden variety, arms’-length employer-employee relationship in the private sector. As a public officer in a local government, Mr. Fernandez was subject to Florida’s statutory declaration of policy that such officers are “agents of the people and hold their positions for the benefit of the public.”[4] As the City Attorney responsible for advising and protecting the City of Miami in legal matters, Mr. Fernandez was required to “represent his client and handle his affairs with the utmost degree of honesty, forthrightness, loyalty and fidelity.” Gerlach, 98 So.2d at 498.
Mr. Fernandez’s attempt to reap the benefit of his own breaches of those duties should not be countenanced, as the trial court found. The final judgment and orders on attorney’s fees and costs are affirmed.
WELLS, J., concurs.

. Although these two reimbursement requests were the only specific offenses charged by the State Attorney's Office, Mr. Fernandez admitted at trial that many more of his expenses reimbursed in 2004, 2005, and 2006 were not related to his duties or the business of the City.

. § 837.06, Fla. Stat. (2008): "False official statements. — Whoever knowingly makes a *557 false statement in writing with the intent to mislead a public servant in the performance of his or her official duty shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.”

. Section 112.313 provides: (5) SALARY AND EXPENSES. — No public officer shall be prohibited from voting on a matter affecting his or her salary, expenses, or other compensation as a public officer, as provided by law. No local government attorney shall be prevented from considering any matter affecting his or her salary, expenses, or other compensation as the local government attorney, as provided by law.”

. § 112.311(6), Fla. Stat. (2006).